No. 37,921

KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., a Corporation, *Appellant*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, JEFF A. ROBERTSON, Chairman and Commissioner, DEWITT M. STILES, Commissioner, and CHARLES M. WARREN, Commissioner, as members of the State Corporation Commission of the State of Kansas, and their respective successors in office, *Appellees*.

(225 P. 2d 1054)

Opinion denying a rehearing filed January 6, 1951. (For original opinion of affirmance see 169 Kan. 722, 222 P. 2d 704.)

No. 37,920

NORTHERN NATURAL GAS COMPANY, a Corporation, *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS and JEFF A. ROBERTSON, Chairman, DEWITT M. STILES, Member, CHARLES M. WARREN, Member of said Commission, and their successors in office, *Appellees*.

Opinion denying a rehearing filed January 6, 1951. (For original opinion of affirmance see 169 Kan. 722, 222 P. 2d 704.)

No. 37,924

PANHANDLE EASTERN PIPE LINE COMPANY, a Corporation, *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, JEFF A. ROBERTSON, Chairman and Commissioner, DEWITT M. STILES, Commissioner, and CHARLES M. WARREN, Commissioner,

as members of the State Corporation Commission of the State of Kansas, and their respective successors in office, *Appellees.*

Opinion denying a rehearing filed January 6, 1951. (For original opinion of affirmance see 169 Kan. 722, 222 P. 2d 704.)

*M. F. Cosgrove,* of Topeka, argued the cause, and *James D. Conway,* of Hastings, Neb., and *D. B. Lang,* of Scott City, were with him on the briefs for the appellant Kansas-Nebraska Natural Gas Company, Inc.

*Mark H. Adams,* of Wichita, argued the cause, and *Lawrence I. Shaw,* of Omaha, Neb., and *A. M. Fleming,* of Garden City, were with him on the briefs for the appellant Northern Natural Gas Company.

*Louis R. Gates,* of Kansas City, argued the cause, and *Mark H. Adams,* of Wichita, and *Edw. H. Lange,* of Kansas City, Mo., were with him on the briefs for the appellant Panhandle Eastern Pipe Line Company.

*Jay Kyle,* general counsel, State Corporation Commission, of Topeka; *R. C. Woodward,* special counsel, of El Dorado, and *Howard T. Fleeson* and *Dale M. Stucky,* both of Wichita, of counsel, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: In their motion for rehearing counsel for appellants contend that since the large percentage of the gas produced or purchased by appellants in the Hugoton gas field is transported in interstate commerce and sold for resale in other states the authority to determine a wellhead value of gas and to make a price fixing order is vested in the Federal Power Commission under the Natural Gas Act (15 U. S. C. A. 717) and not in the State Corporation Commission, citing Interstate Gas Co. v. Power Comm'n, 331 U. S. 682, 67 S. Ct. 1482, 91 L. Ed. 1742, as having fully determined the matter. The point is not well taken and the case cited does not support that view. The opinion cited and the opinions in the same case in the inferior courts clearly demonstrate the contrary. The case originated by a complaint filed in 1939 by the Louisiana Public Service Commission with the Federal Power Commission, complaining of rates for the sale of gas in Louisiana, transporting it interstate by the Interstate Natural Gas Company. On December 5, 1939, the Federal Power Commission enlarged the scope of the investigation to include the reasonableness of all of Interstate's wholesale and transportation rates under the provisions of the Natural Gas Act. The cities of New Orleans and Baton Rouge were permitted to intervene. Pursuant to notice and

after pretrial conferences hearings were had in June and July, 1942. Pending the consideration of the matter Interstate voluntarily reduced rates for the sale of its gas. After a full investigation of the matter the Federal Power Commission made an order requiring Interstate to file a new schedule of rates and charges for the transportation and sale of natural gas in interstate commerce to its customers for resale for ultimate consumption, in amount not less than $1,100,345 annually, computed upon the amount of gas sold in 1941. (See F. P. C., Vol. 3, pp. 416 to 435.) It appears this schedule of rates reduced the price to the other pipe line companies from 7.39·cents to 4.66 cents per M. c. f. The Interstate petitioned the United States Circuit Court of Appeals to review that part of the order. The court's opinion is reported in 156 F. 2d 949. There Interstate contended, (1) "that the sales were not within, but were expressly excluded from, the jurisdiction of the commission; and (2) that the order as to them is confiscatory." On the first point Interstate relied on the language of the act and what it called "authorized statements of commission representatives," and "legislative history." The court said:

"On the jurisdictional point, we think the language employed in the bill as it finally passed, 'The provisions of this act shall apply . . . to the sale in interstate commerce of natural gas for resale for ultimate public consumption, and to natural gas companies engaged in such transportation or sale' leaves in no doubt that the sales in question are within its purview. That they are sales in interstate commerce, we think is settled by the authorities. That the gas was sold for resale for ultimate public consumption, we think may not be doubted. (This was conceded before the Federal Power Commission, see 3 F. P. C. 419.) This being so, the exception of the statute that it shall not apply to 'any other . . . sale of natural gas' is unavailing to petitioner, for if the sale is the kind named in the first quoted clause, it certainly cannot be 'any other sale.'"

There is further discussion on this point in which the court cites *Peoples Natural Gas Co. v. Federal Power Commission*, 127 F. 2d 153, and *Canadian River Gas Co. case*, 324 U. S. 581, at pp. 602-603, 65 S. Ct. 829, 839, 89 L. Ed. 1206. The court pointed out that the portion of the petitioner's brief devoted to legislative history shows that it does not distinguish between the Lee bill, House Bill No. 11,662, proposed in 1936 but never passed, and the bill which became the law now under review, and said:

"Legislative history 'cannot be resorted to for the purpose of construing a statute contrary to the natural import of its terms. . . . If the language

be clear, it is conclusive.' (Citing cases.) . . . Certainly the legislative history of a bill that was not adopted cannot be resorted to to construe a bill that was. . . .

"The purpose of the Natural Gas Act, as shown in the Senate and House Committee reports, which are identical, was to provide for the regulation of natural gas companies transporting and selling natural gas in interstate commerce. Its proponents were not interested in the production of gas *or the individual sales of gas at the well.* Nor were they interested in the gathering of the gas in the field. What they were interested in, as the report in terms states, what they were trying to reach, was wholesale sales of gas." (Our emphasis.)

This is followed by further quotation from the report.

Since the sales in question were to other natural gas companies the court sustained the jurisdiction of the Federal Power Commission. On the point argued, that the reduction was confiscatory, the court held that the order to reduce rates must be considered in its entirety, and since it did permit a reasonable return upon Interstate's investment details of the order would not be considered separately even though the Commission suggested evidence that would have sustained it had it been considered alone. The United States Supreme Court granted certiorari limited to the question of jurisdiction, which it considered thoroughly and sustained the judgment of the Court of Appeals, and this is the opinion relied upon now by appellant. Not in any of the opinions was there any indication that the Federal Power Commission considered a well-head price of gas, or did anything indicating that it had authority to do so.

The case now relied upon by appellant was cited in *Federal Power Com'n v. Panhandle Eastern Pipe Line Co.*, 172 F. 2d 57, 337 U. S. 498, 69 S. Ct. 1251, 93 L. Ed. 1499, cited and relied upon in our opinion, and there no such interpretation was given to it as appellant now contends that it deserved. We have examined all the cases construing the Natural Gas Act which were cited by appellants in their brief, and many others, and do not find any of them in which the Federal Power Commission attempted to or claimed authority to fix a wellhead price for gas. On the other hand, we do find cases in which the Federal Power Commission construes the cost of gas at the wellhead as an operating expense of the Interstate Natural Gas Company irrespective of what that price may be. For example, see Cities Service Gas Company, 3 F. P. C. 489.

Aside from *Interstate Gas Co. v. Power Commission,* supra, upon

which appellants rely so heavily in the motion for rehearing, and which, obviously, they have not studied sufficiently to realize that it has no application to this case, the motion for rehearing does but little more than reargue questions previously argued and which were considered and treated in our opinion or found to have no substantial merit. They do rely somewhat upon the dissenting opinion. The points raised therein had been considered and disapproved by the court when the opinion was written. We find no necessity to go over these matters in detail.

We do call attention to the opinions of the United States Supreme Court in *Cities Service Gas Co. v. Peerless Oil & Gas Co.,* et al., (340 U. S. 179, 71 S. Ct. 215, 221, 95 L. Ed. 156), which affirmed the supreme court of Oklahoma in *Cities Service Gas Co. v. Peerless Oil & Gas Co.,* 203 Okla. 35, 220 P. 2d 279, which affirmed an order of the Corporation Commission of the state of Oklahoma which fixed prices at the wellhead on natural gas produced within the state and sold interstate under statutes substantially as our own.

When we wrote our opinion in this case we were familiar with the decision of the supreme court of Oklahoma, but we preferred not to cite it, since appeals had been taken from it to the United States Supreme Court. The decisions of that court on those appeals were adverse to the contention of the appellants here upon all of the controlling points urged by them.

There is no need for us to say more. The motion for rehearing is denied.

At their specific request, Mr. Justice WEDELL and Mr. Justice PRICE are noted as adhering to their dissent in the original opinion.