CITIES SERVICE GAS COMPANY, a Corporation, *Appellant,* v. STATE CORPORATION COMMISSION OF KANSAS, HARRY SNYDER, JR., Chairman, RICHARD C. BYRD and JOHN I. YOUNG, as Members of said Commission, and their respective successors in Office, *Appellees.*

No. 40,403

THE CITY OF BELOIT, KANSAS, and 145 other Kansas Cities (Anthony, Atchison, Augusta, Axtell, Baldwin, Barnard, Baxter Springs, Belle Plaine, Belleville, Blue Rapids, Bogue, Buffalo, Buhler, Burns, Burr Oak, Cedar Vale, Chapman, Cherryvale, Chetopa, Clay Center, Clifton, Coffeyville, Colwich, Conway Springs, Council Grove, Countryside, Dearing, Dighton, Downs, Edgerton, Elgin, Ellinwood, Ellis, Emporia, Ensign, Esbon, Formoso, Fort Scott, Fowler, Frankfort, Galena, Garfield, Garnett, Gem, Geuda Springs, Girard, Glasco, Goodland, Great Bend, Greensburg, Gypsum, Haddam, Halstead, Hanover, Hays, Herington, Hill City, Hillsboro, Holton, Horton, Huron, Independence, Iola, Jetmore, Junction City, Kanopolis, Kensington, Kingman, La Harpe, Lawrence, Leavenworth, Lebanon, Lenexa, LeRoy, Lincoln Center, Lindsborg, Little River, Longton, Luray, Lyndon, McPherson, Macksville, Madison, Mahaska, Mankato, Marysville, Meriden, Miltonvale, Minneapolis, Morrill, Mulvane, Munden, Merriam, Narka, Natoma, Neodesha, Ness City, Newton, Norcatur, Norton, Oakley, Osawatomie, Osage City, Plainville, Pomona, Prairie Village, Pratt, Preston, Quenemo, Ramona, Rantoul, Reserve, Roeland Park, St. Francis, St. Marys, Scammon, Scott City, Sedan, Sedgwick, Seneca, Shawnee, Silver Lake, Sterling, Stockton, Sylvan Grove, Thayer, Topeka, Toronto, Turon, WaKeeney, Wamego, Washington, Waterville, Waverly, Weir, Wellington, Westmoreland, Whitewater, Whiting, Williamsburg, Wilson), *Appellants,* v. STATE CORPORATION COMMISSION, et al., *Appellees.*

(304 P. 2d 528)

Opinion filed December 8, 1956.

*Mark H. Adams,* of Wichita, and *Joe Rolston,* of Oklahoma City, Oklahoma, argued the cause, and *M. F. Cosgrove,* of Topeka, *D. B. Lang,* of Scott City, *Conrad C. Mount, O. R. Stites* and *Gordon J. Quilter,* all of Oklahoma City, Oklahoma, were with them on the briefs for the appellant Cities Service Gas Company.

*Ralph W. Oman,* of Topeka, argued the cause, and *Robert L. Webb, Philip E. Buzick, Robert A. McClure,* and *James D. Waugh,* all of Topeka, were with him on the briefs for the appellant Cities.

C. C. *Linley,* general counsel, State Corporation Commission, of Topeka, and *Dale M. Stucky,* special counsel, of Wichita, argued the cause, and *Charles R. Escola,* assistant general counsel, of Topeka, and *Howard T. Fleeson* and *Wayne Coulson,* of counsel, both of Wichita; and *Don C. Smith,* special counsel, of Dodge City, were with them on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: The present appeals, consolidated for purposes of review in this court, challenge the validity of an order of the State Corporation Commission (hereinafter referred to as the Commission) subsequently upheld in a review proceeding by the district court of Finney County, fixing a minimum price of eleven cents per thousand cubic feet, 14.65# p.s.i.a., at the wellhead for all persons, firms or corporations taking gas or causing gas to be taken from the Hugoton Gas Field in Kansas on or after January 1, 1954.

The salient facts essential to a proper understanding of the issues involved will be related as briefly as the state of a lengthy record permits.

On August 18, 1952, the Southwest Kansas Royalty Owners Association, a corporation, and other individuals, commenced the proceedings by filing with the Commission a petition, alleging in substance that a previous minimum gas price order made by that body was no longer adequate to conserve and prevent waste of natural gas and protect correlative rights in its common source of supply in the Hugoton Field and requesting that, pursuant to authority conferred upon it by the provisions of G. S. 1949, 55-701 to 55-713, incl., the Commission set a minimum price, for such gas in such field, of not less than fourteen cents per M.c.f. measured on a pressure basis of 16.4 pounds per square inch or not less than twelve cents per M.c.f. measured on a pressure basis of 14.65 pounds per square inch.

Shortly after the commencement of the proceedings the appellants herein intervened and filed written protests. In its protest the Cities Service Gas Company (hereinafter referred to as the Gas Company) alleged that it was a foreign corporation, a natural gas company as defined in the Natural Gas Act as amended (15 U. S. C. A. § 717), was engaged generally in the business of producing and purchasing natural gas for transportation and sale in interstate commerce for resale by means of an integrated pipeline system extending through several states and protested the granting of the relief sought by the petitioners on numerous grounds, the one here

involved being that under the facts and circumstances currently existing in the Kansas-Hugoton Field, and operations of the protestant therein, the Commission had no jurisdiction or authority, either on application of petitioners or otherwise, to fix or determine either a minimum or other price for natural gas produced in and from such field. In their protest the appellants, the City of Beloit, Kansas, and the other Cities listed in the title of this opinion (hereinafter referred to as the Cities), alleged that they were interested parties because their inhabitants were purchasers, users and consumers of natural gas for divers domestic, household and industrial purposes and then, for purposes here in question, protested the granting of the relief sought by petitioners on grounds practically the same as those relied on by the Gas Company in its protest.

On December 2, 1953, effective January 1, 1954, the Commission, after hearings consuming approximately thirteen days, promulgated and issued a minimum value attribution and/or price order for the Kansas portion of the Hugoton Gas Field. For present purposes it may be said that the all important portion of such order reads:

"That all persons, firms or corporations which take gas or cause gas to be taken from the Hugoton Gas Field in Kansas on and after January 1, 1954, 12:01 a. m., shall, as a condition precedent for withdrawal from the common source of supply, pay or attribute to all gas taken, except gas for the operations of leases, for all purposes including payments to producers, landowners, lease-owners and royalty owners, the fair and reasonable minimum price of not less than eleven cents (11¢) per Mcf. (14.65# psia.) at the wellhead until further order or orders of this Commission."

By reference the Commission made a memorandum opinion a part of the foregoing order. This order is lengthy and in such form its averments cannot be readily summarized. However, it leaves no doubt and eliminates all confusion as to the purpose of the Commission in making the order and the grounds on which it based its action. For these reasons we attach a copy of such memorandum to this opinion as an appendix where it will be available for ready reference.

The Gas Company and the Cities each filed motions for rehearings. These were considered by the Commission and overruled. Thereupon such parties filed their separate actions for judicial review of the order of the Commission by the district court of Finney County, as authorized by G. S. 1949, 55-707, in the manner provided in G. S. 1949, 55-606. Ultimately these actions were consolidated for trial by such district court and heard together. What happened

during the trial and the results thereof are best reflected in identical journal entries of judgment. With respect to such matters these journal entries, omitting three paragraphs thereof relating to motions to dismiss by the defendants the Commission and the three acting members thereof in their official capacity, not involved on appellate review, read:

"Now on this 26th day of April, 1956, this matter comes on duly for hearing and trial, the parties appearing by and through their respective counsel of record.

"Thereupon, in open court, the evidence is submitted to the court on the record of the proceedings had before the State Corporation Commission, on the abstracts, counter abstracts and supplements thereto, filed herein by the parties, including the exhibits introduced in such proceedings."

.   .   .   .   .   .   .   .   .   .   .   .

"Thereupon, the court proceeded to hear further arguments to their conclusion and, the cause being fully submitted, took the case under advisement.

"Now on this 14 day of May, 1956, the court having given due consideration to all the evidence in the cause as aforesaid, the briefs and oral arguments of counsel, and being otherwise fully advised in the premises, finds:

"1. That the Order entered by the State Corporation Commission of the State of Kansas, one of the defendants herein, in its Docket No. 44,079-C (C-3216), Conservation Division, on the 2nd day of December, 1953, on review herein, was a lawful and reasonable order.

"2. That said Order here before this court on a petition for review should be upheld and sustained.

"IT IS THEREFORE BY THE COURT ORDERED, ADJUDGED AND DECREED that said Order entered by the State Corporation Commission of the State of Kansas, one of defendants herein, in its Docket No. 44,079-C (C-3216), Conservation Division, on the 2nd day of December, 1953, be and the same is hereby upheld and sustained, and that the costs of review in this court be and they hereby are assessed against the plaintiff."

Following rendition of the foregoing judgment the plaintiffs in the two actions, i. e., the Gas Company and the Cities, filed separate motions for a new trial. When these motions were overruled such plaintiffs perfected separate appeals which, upon reaching this court, were consolidated for purposes of hearing and argument on motion of the appellant Cities.

From what has been stated up to this point it might seem that many issues are involved on this appeal. Not so. It can be conceded that numerous issues were raised by the protesting appellants before the Commission and in the trial of the issues presented by their respective petitions for judicial review in the court below. However, the fact is that under their specifications of error and questions stated and argued in their briefs, which we pause to note

are substantially the same and may hereafter be treated as identical in nature, the sole question presented on appellate review is, that in the light of the facts and circumstances of record, the Commission had no jurisdiction to issue the minimum value attribution and/or price order in question because the sole and exclusive jurisdiction to make such order is vested in the Federal Power Commission under the Natural Gas Act (15 U. S. C. A. § 717); and that all other issues raised below have been abandoned by appellants and are not here subject to review. Therefore we proceed on that basis, noting as we do so that such question will be disposed of without regard to reference made by the Commission in its brief and on oral argument to an interpretation of the involved order made subsequent to the date on which the rights of the parties were determined by the judgment rendered in the district court.

In approaching consideration of the foregoing question its disposition will be simplified by pointing out and directing attention to other facts and matters of record about which there can be little if any dispute. These, so far as appellants are concerned, may be stated thus.

During all dates in question the Gas Company, a natural gas company as defined in the Natural Gas Act, in its operations in the purchase of gas in the Kansas-Hugoton Field purchased gas from the producers delivered at the wellhead, also delivered at its pipe line in the field after production and gathering had ended. It had no production in the field and purchased therein all gas so obtained. Of the gas so purchased during the year 1951, 55.4 percent was purchased at the wellhead and 44.6 percent pipeline delivered in the field after production and gathering had been completed.

From what has been heretofore stated it appears that the sales of gas made by producers in the field to the Gas Company, in the first instance after production had ceased and in the second after production and gathering had ended, were sales in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial or other uses. It also appears from such record that after such sales had been completed the Gas Company placed such gas in its interstate integrated pipeline system and thereafter made resales thereof to at least some of the appellant Cities.

We now turn to facts and matters, more important to the Commission's position the judgment should be upheld, about which

there can be no more controversy than there is respecting those last above stated.

In Kansas, under legislation enacted to control the production and conservation of natural gas and to prohibit waste (G. S. 1949, 55-701 to 55-713, incl.) the production and distribution of natural gas for light, fuel and power is a business of a public nature, the control of which belongs to the state. See *La Harpe v. Gas Co.,* 69 Kan. 97, 76 Pac. 448, and *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* infra, and under the sections of the statute above cited, the power to prevent waste and conserve natural gas is vested in the State Corporation Commission.

In *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 169 Kan. 722, 222 P. 2d 704, rehearing denied in 170 Kan. 341, 225 P. 2d 1054, which has never been repudiated and is still the law of this state, this court held that the Corporation Commission had authority to make an order fixing the minimum wellhead price for natural gas taken from a common source of supply if the evidence before it justified its conclusion that such order was necessary in order to prevent waste and to secure the relative rights of owners of real property from which gas is produced from a common source of supply. And commencing with page 728 of the opinion rejected a contention similar to the position assumed by appellants here that since Cities Service is engaged in the business of transporting natural gas in interstate commerce it is governed wholly by the Federal Natural Gas Act and therefore the Commission had no jurisdiction to make an order similar to the one presently involved.

The Order issued by the Commission in the instant case is substantially the same as the one involved in the last above cited case (169 Kan. 722), the only difference being that the present order raises the minimum value attribution and price of gas at the wellhead for the Hugoton Field, with some variation in pounds p. s. i. a., from eight cents to eleven cents per M. c. f. and expressly provides that all persons, firms or corporations which take gas or cause gas to be taken from such field shall pay or attribute such minimum value attribution or price *as a condition precedent for withdrawal from the common source of supply.* (Emphasis supplied.)

Finally it can be stated that, inasmuch as appellants have abandoned all questions involved in the court below except the jurisdictional one heretofore mentioned, we must and do assume, the

evidence before the Commission was sufficient to sustain its findings to the effect the involved order, upheld and sustained by the trial court, was necessary and required in the interest of conservation and prevention of waste of gas in the Hugoton Field.

The parties are far apart in their construction of the Commission's order. On the one hand the appellants contend such order is a price-fixing order having application to sales of natural gas made by producers after its production and gathering has ended. On the other the Commission contends it is purely a conservation measure, limited to production of gas from the common source of supply before cessation of production, which makes the minimum attribution price therein prescribed a condition precedent to the withdrawal of any natural gas whatsoever from such source. We are not inclined to labor arguments made by the parties respecting the construction to be given the order. It suffices to say, that after a careful analysis thereof, we have no difficulty in construing its terms to mean that no person, firm or corporation—first of all the producer—can lift or take gas in its natural state from the depths of the Hugoton Field to a point further than the wellhead without, as a condition precedent to its withdrawal from the common source of supply, first attributing thereto a minimum price of not less than eleven cents per M. c. f. (14.65 # p. s. i. a.). So construed, recognizing as we must that under our own decisions (*Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* supra; *La Harpe v. Gas Co.,* supra) as well as those of the highest court of the land (see, e. g., *Thompson v. Consolidated Gas Co.,* 300 U. S. 55, 81 L. ed. 510, 57 S. Ct. 364; *Interstate Gas Co. v. Power Comm'n,* 331 U. S. 682, 91 L. ed. 1742, 67 S. Ct. 1482; *Cities Service Co. v. Peerless Co.,* 340 U. S. 179, 95 L. ed. 190, 71 S. Ct. 215; *Phillips Petroleum Co. v. Oklahoma,* 340 U. S. 190, 95 L. ed. 204, 71 S. Ct. 221) the Commission has power to regulate the physical production and gathering of natural gas in the interest of conservation, including the protection of correlative rights and the prevention of waste, the involved order falls squarely within the hereinafter emphasized excluding provisions of the Natural Gas Act (15 U. S. C. A. § 717 [b]) which reads:

"The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial,

or any other use, and to natural-gas companies engaged in such transportation or sale, *but shall not apply* to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution *or to the production or gathering of natural gas*." (Emphasis supplied.)

Thus, based on our construction of the order and since the Federal Act, as heretofore quoted, expressly provides that its terms shall not apply to the production of natural gas, it appears the trial court did not err in concluding the Commission's order should be upheld and sustained.

On the basis of what has been heretofore related, and without repeating it, we believe there is another sound reason for upholding the two judgments now under consideration. It is based in part on the doctrine of *stare decisis*. In *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* supra, in the face of facts and circumstances so similar as to afford no sound ground for distinguishing that case and the one at bar from a factual standpoint, we held that the Commission had power, authority and jurisdiction to enter an order substantially the same as the one here involved in the interest of conservation of gas in the Hugoton Field. In our opinion that decision, which is still the law of this state, is a controlling precedent and adherence to what is there said and held requires an affirmance of the instant judgments.

It may be conceded, as appellants suggest, that by reason of Article VI of the Constitution of the United States this court is controlled by the interpretation placed upon a Federal statute (in this case the Natural Gas Act) by the decisions of the Supreme Court of the United States and that this is true regardless of views of state courts even though such decisions are in conflict with their prior decisions. Indeed no court has been more observant of this principle than our own. See, e. g., *Amalgamated Meat Cutters, Etc. v. Johnson,* 178 Kan. 405, 412, 286 P. 2d 182 and *Kaw Paving Co. v. International Union of Operating Engineers,* 178 Kan. 467, 472, 290 P. 2d 110. So we come to the last question of importance.

In an attempt to avoid the force and effect of the conclusions, heretofore announced, appellants place great weight on three comparatively recent decisions of the Supreme Court of the United States, i. e., *Phillips Petroleum Co. v. Wisconsin,* 347 U. S. 672, 98 L. ed. 1035, 74 S. Ct. 794; *Natural Gas Co. v. Panoma Corp.* (decided together with *Natural Gas Pipeline Co. v. Corporation Commission of Oklahoma et al.*), 349 U. S. 44, 99 L. ed. 866, 75 S. Ct.

578. Their claim in this respect is that in such decisions the Supreme Court of the United States has placed an interpretation upon the Natural Gas Act (15 U. S. C. A. § 717) contrary to our decision, in *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* supra, and contrary to conclusions heretofore announced by us in this opinion. It suffices to say, that after analyzing them we are unable to concur in appellants' construction thereof and have reached the conclusion that the Per Curiam opinion in *Natural Gas Co. v. Panoma Corp.,* supra, shows on its face that their construction of such decisions is unwarranted. So far as here pertinent the opinion in the case last cited reads:

"*In these cases Oklahoma has attempted to fix a minimum price to be paid for natural gas, after its production and gathering has ended,* by a company which transports the gas for resale in interstate commerce. We held in *Phillips Petroleum Co. v. Wisconsin,* 347 U. S. 672, that such a sale and transportation cannot be regulated by a State but are subject to the exclusive regulation of the Federal Power Commission. The *Phillips* case, therefore, controls this one." (Emphasis supplied.)

Here, as we have indicated, the Kansas Commission has fixed a minimum price to be paid for gas before cessation of production. This fact in itself is sufficient to distinguish the decisions on which appellants rely and warrants our conclusion they are not to be regarded as controlling precedents.

Finally appellants contend that the trial court in rendering its judgments determined the price order in question applied to the operations of the Gas Company. We do not agree. Resort to its judgment, heretofore quoted, discloses that all it did was uphold and sustain the order of the Commission, aimed at curtailing production in the Hugoton Field and based expressly on the premise the Commission was not fixing a price for gas in the field but prescribing a minimum price for all gas at the wellhead as a condition precedent for withdrawals from the common source of supply in the interest of conservation.

One last point, not connected with the merits, requires our attention. The Commission has filed a voluminous counter abstract in two sections, claiming the amount paid for printing the entire counter abstract. Section I abstracts the evidence presented before the Commission at the hearing of the instant proceedings. Section II abstracts the evidence and proceedings before the Commission leading up to and resulting in our decision in *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* supra. The Gas

Company has filed a motion claiming that due to the issue as limited in its abstract and brief the printing of this counter abstract was unnecessary, hence all costs incurred should be borne by the latter. Nothing would be gained by detailing the reasons responsible for our disposition of this motion. All that is required is to state our conclusion. It is that section I of the counter abstract was proper, while section II thereof was unwarranted. Therefore, since each section of the counter abstract is about the same size, we find that the Commission is entitled to make claim for only one-half of the amount expended for printing the counter abstract as costs of this proceeding.

The conclusions heretofore announced require that the judgments be affirmed.

It is so ordered.

SMITH, C. J., not participating.

---

## APPENDIX

### MEMORANDUM OPINION

BY THE COMMISSION:

Our position respecting the attribution of a minimum wellhead price for natural gas from a common reservoir is so patent that we do not propose here to elaborate extensively on the subject matter. In the Memorandum Opinion entered on February 23, 1949, in Docket No. 35,154-C (C-1868), we set out our views at length when Kansas was pioneering in adoption of a minimum wellhead price as a conservation measure for an important irreplaceable natural resource.

That the State has a right, in the interest of conservation, to fix a minimum wellhead price for natural gas in a common source of supply, if the evidence justifies the conclusion that such an order is necessary to prevent waste and protect correlative rights, is now settled law (*Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 169 Kan. 722, 222 P. 2d 704, and 170 Kan. 341, 225 P. 2d 1054; *Phillips Petroleum Company v. State of Oklahoma*, 340 U. S. 190, 71 S. Ct. 221, 95 L. ed. 204; *Cities Service Gas Company v. Peerless Oil and Gas Co.*, 340 U. S. 179, 71 S. Ct. 215, 95 L. ed 190.)

In the docket to which we have here referred after protracted

hearings we promulgated an interim order on February 18, 1949, establishing a minimum wellhead price of eight cents (8¢) per M.c.f. for gas in the Kansas portion of the Hugoton Gas Field. The eight cent (8¢) figure prevails at this writing. In the Memorandum Opinion we said:

"The evidence offered at the hearings in this proceeding is not sufficient to permit us to determine finally what a reasonable and fair minimum fixed price at the wellhead should be in the field."

By separate order on the same day we instituted our own investigation of prices being paid at the wellhead in the field.

By order of May 2, 1951, Docket 35,154-C (C-1868) and Docket C-164, the Commission closed that investigation assigning as reasons therefor in substance: that because of the long lapse of time resulting from litigation and the changes, meanwhile, in field conditions and development, and in marketing and conservation practices, much of the evidence at the hearing had become obsolete, lacked continuity and had become of questionable significance in determining a reasonable minimum price. We, however, said in that order:

"If upon further consideration . . . it is deemed appropriate in the interest of conservation . . . to explore current factors and prevailing trends regarded as necessary in the determination of a minimum value other than 8 cents . . . the institution of a new investigation would be more feasible, beneficial and practical. . . ."

The Commission never instituted a new investigation on its own motion, but it did use the instant docket for the purpose of making a very comprehensive and exhaustive study of the entire matter, allowing all persons having any possible interest in the matter, to present their evidence. Certain interests attempted to have the instant hearing limited to the period of time since March 1, 1949, the effective date of the Interim Order. The Commission, however, refused to so limit it and conducted the hearing as if the whole matter were being considered *ab initio*.

The history of these proceedings forcibly leads to the conclusion that we used in our Interim Order the very least possible minimum price then determinable and intimated that further study could well demonstrate that a higher minimum price was reasonable and necessary.

To disregard the preponderance of evidence before us now would in effect be finding that the eight-cent minimum price has accomplished in the prevention of waste all that any minimum price could

accomplish and that no waste, physical, economic or other is now occurring in the field which any minimum price could prevent.

Before us is an application requesting a new minimum wellhead price for natural gas in the Kansas-Hugoton Gas Field of fourteen cents (14¢) per M.c.f. on a pressure basis of 16.4 pounds p.s.i.a. or in the alternative not less than twelve cents (12¢) per M.c.f. measured on a pressure basis of 14.65 pounds p.s.i.a.

Prior to the filing of the application on August 18, 1952, we had been giving information consideration and study as to whether or not the adopted minimum wellhead price of eight cents (8¢) per M.c.f. in the field was efficacious. We have reached the conclusion that it is not.

The vastness and importance of the Hugoton Gas Field to Kansas requires our every-day attention. It must be remembered that the field, approximately sixty-five per cent of which underlines nine southwestern Kansas counties, also extends into the states of Oklahoma and Texas. In February, 1948, the public records of this Commission disclose there were 985 wells in the Kansas portion of the field, whereas in November, 1953, there were 3,065, an increase of more than 300%, with more wells drilling. It is readily seen that there are ever-changing conditions in the field and conditions that exist now affecting conservation which were not conceivably involved in the hearings in 1948 relative to Docket No. 35,154-C (C-1868). With the great number of wells in the field today, the public interest becomes all the more pronounced in the conservation of this precious fuel. We therefore are aware at all times of the realistic circumstances through which gas is withdrawn from the producing horizons of that field.

In this docket we have held extensive public hearings consuming twelve days and one night session. The transcript of these proceedings covers 2,284 pages and seventy exhibits were offered. The applicants produced an abundance of testimony as did certain of the protestants which included pipe-line companies and representatives of gas consumers in the state. We have painstakingly reviewed the transcript of all the testimony and have arrived at the conclusion that the preponderance of evidence is that the prevailing minimum wellhead price in the Hugoton Gas Field is obsolete and that we should adopt a new wellhead price in the interest of protecting the public from dissipation of this irreplaceable natural resource, to carry out our statutory duties in the avoidance of waste and to protect correlative rights.

In this Memorandum Opinion, as we indicated, we do not intend to write a dissertation on the subject of minimum wellhead prices as conditions precedent for withdrawing gas from a common source of supply, but there are a few inescapable deductions that cannot be refuted which we wish to observe in passing.

The first deduction remains today, as was pointed out in our Memorandum Opinion of February 23, 1949, that gas is not truly competitive with the two other main fuels; namely, coal and oil. The cheapest and most efficient of the three fuels, gas is more convenient in more uses to the consumer than are the others. This is all borne out by the record. Gas is a commodity. Cheapness of a commodity is an avenue to ultimate waste. It is common knowledge that the records of every pipeline company and distributing company are replete with astonishing numbers of conversions from other fuels to natural gas where it is available.

Thus if the minimum wellhead price of natural gas is permitted to remain too low, effectiveness in achieving its objective as a conservation measure is thwarted.

Second, it cannot be factually disputed that the Kansas portion of the Hugoton Gas Field is in closer proximity to the markets in the North, East and West; namely, Kansas, Colorado, Wyoming, Nebraska, South Dakota, Minnesota, Iowa, Missouri, Illinois, Indiana, Pennsylvania, Ohio and Michigan, than those portions lying in the other states which comprise the Hugoton Gas Field in its entirety. The essence of that fact is that the cost of the transportation of gas to these markets from Kansas is less than from either Oklahoma or Texas. If the minimum wellhead price of gas is lower, less the differential in transportation and other items, there exists clearly a violation of correlative rights and the resultant discrimination is conducive to waste for apparent reasons. Anyone familiar with the Hugoton Gas Field knows that situation prevails today. If such a situation continues to exist, it is obvious as a matter of economics that it will lead to earlier depletion of the Kansas wells, thus violating correlative rights and making disproportionate withdrawals possible.

Gas nearer the markets should command a higher price. Northern Natural Gas Company, a protestant here and a large taker from the field, is now paying a much higher price for its Permian Basin (Texas and New Mexico) gas delivered to Skellytown, Texas; yet its markets are in Minnesota, Iowa, South Dakota, Nebraska and Kansas. (less than 4% in Kansas.)

There is another observation that we wish to make. Certain of the protestants here have been under the impression that this was a rate case. That assumption is erroneous. Therefore, the testimony on behalf of these protestants is not germane to the issue of conservation. We conducted these proceedings as the gas conservation agency of the state under G. S. 1949, Chapter 55, Article 7, and not as the public regulatory body as provided by G. S. 1949, Chapter 66. Only one of the distributing companies in the state and three others which are both pipeline companies and distributing companies, participated in these proceedings. It is significant that neither of the two largest gas distributing companies in Kansas and others assumed that this was a rate case.

It is true that this Commission, as a public regulatory body, has rate-making authority within the state of Kansas but does not possess nor seek to possess jurisdiction over rates for the sale of natural gas in interstate commerce. The theory pointing to the arguments in the record respecting rates must be dispelled. In adopting a minimum wellhead price for the Hugoton Gas Field in Kansas, we look exclusively to the interest of the public in conservation.

All the factors which supported the eight-cent (8¢) minimum price in 1949 will, in the light of further consideration, support a higher minimum now.

Some inequities were corrected by the Interim Order, but others still exist. Some purchasing companies, after the minimum eight-cent order voluntarily adjusted their prices, even on old contracts, somewhat above eight cents. Others did not. That eight cents is not now a reasonable minimum price is evidenced by the fact that practically all new contracts have been made at higher prices and many old contracts changed to more than eight cents.

Since the minimum eight-cent order in 1949, there has been a marked increase in the cost of development, an increase in the number of wells in the field, a change in the amount and nature of the demand for gas with an exceptionally great increase in the demand for space heating; additional pipelines have been built and new markets added.

It is an accepted fact that increase in storage fields has made pipeline companies less dependent on industrial loads to maintain good load factors; consequently there is less reason for extremely

low prices to industries. As an illustration of this factor, Cities Service Gas Company, currently largest taker from the field, has developed underground storage facilities extensively in Kansas. A recent development is the Colony Gas Field in Anderson County, Docket No. 44,080-C (C-3217). One of its large distributing companies, Union Gas System, Inc., has pioneered in underground reservoirs in southeastern Kansas, and now employs such facilities to augment its normal pipeline withdrawals. Other pipeline takers have underground storage space beyond the borders of the state or are in the process of acquiring such facilities.

And too, increase in source cost (price) of gas has not kept pace with increase in source prices of other fuels because owners of land and producers of gas have no freedom of contract.

The field has now developed to the extent that there is not enough undedicated acreage to warrant any new pipelines and no reason to expect any advance in price by reason of competition.

The evidence disclosed that wellhead prices of gas have been increased in Ohio, Texas, New Mexico, West Virginia, Oklahoma, the Gulf Coast area, and practically all producing states in relatively unimportant small fields.

As has been noted, we adhere to our conclusions in the Memorandum Opinion of February 23, 1949, in all respects except it is our position after study and research that today, under the prevailing conditions, the eight-cents (8¢) per M. c. f. minimum price adopted in 1949 is neither fair nor reasonable.

Finally, it is now fundamental and accepted that price is a dominant medium to conservation. We are not here fixing a price for gas in the field, a maximum price, a fair field price or a going price, but we are prescribing a minimum price for all gas, except for lease usage, of eleven cents (11¢) at the wellhead on a pressure base of 14.65 pounds p. s. i. a. *as a condition precedent for withdrawals from the common source of supply, in the interest of conservation.*

An appropriate order in conformance with the views heretofore expressed will be entered in this docket as of this day.