COLUMBIAN FUEL CORPORATION, a Delaware corporation, TEXACO, INC., a Delaware corporation, and PAN AMERICAN PETROLEUM CORPORATION, a Delaware corporation, Petitioners, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY, and THE HONORABLE ANDREW D. CHRISTIE, sitting as a Judge of that Court, Respondents, and CITIES SERVICE GAS COMPANY, a Delaware corporation, Intervening Respondent.

(*February* 25, 1960.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*James M. Tunnell, Jr.* (of Morris, Nichols, Arsht and Tunnell) for Petitioners.

*Clark, Carr* and *Ellis* (of New York City) for Petitioner, Columbian Fuel Corporation; *Paul F. Schlicher* and *Alfred C. De Crane, Jr.* (of New York City) for Petitioner, Texaco, Inc.; *W. W. Heard* (of Tulsa, Oklahoma) for Petitioner, Pan American Petroleum Corporation.

*Howard L. Williams* and *Henry N. Herndon, Jr.* (of Morris, James, Hitchens and Williams) and *C. C. Mount* (of Oklahoma City) and *Jack Werner* (of Washington, D. C.) for Intervening Respondent, Cities Service Gas Company.

*Edmund D. Lyons* (of Morris, James, Hitchens and Williams) and *John T. Grant* (of Omaha, Nebraska) for Northern Natural Gas Company, *Amicus Curiae.*

Supreme Court of the State of Delaware, No. 69, 1959.

SOUTHERLAND, C. J.:

The petition attacks the jurisdiction of the court below to entertain four actions at law brought by Cities Service Company against three defendants, the petitioners above named. In these actions Cities seeks to recover from defendants large sums of money representing part of the payments made by Cities to defendants for natural gas between January 1, 1954 and late 1957.

The factual background of the claims is as follows:

Cities is a natural gas pipeline company. It transports natural gas from Hugoton Field in Kansas, in interstate commerce, to local distributing companies. Defendants are producers of natural gas from that field.

In 1949, 1950 and 1951 Cities and the defendants entered into contracts for the sale of gas by defendants to Cities at prices less than eleven cents a thousand cubic feet, measured on a pressure base of 14.65 pounds per square inch absolute. Since the execution of these contracts defendants have supplied Cities with gas from the Hugoton Field.

Prior to the execution of these contracts Congress had adopted the Natural Gas Act. Act of June 21, 1938, 15 *U. S. C. A.* § 717. The Federal Power Commission was empowered to regulate the sale in interstate commerce of natural gas for resale. Because of an exemption in the act the Federal Power Commission thereafter disclaimed jurisdiction over sales by producers, such as defendants.

On December 2, 1953, the Corporation Commission of the State of Kansas promulgated an order, effective January 1, 1954, fixing a minimum price of not less than 11¢ per M. c. f., measured on a pressure base of 14.65 p. s. i. a., to be paid for natural gas produced by defendants from the Hugoton Field. Cities and others filed suit in the Kansas courts for a judicial review of the order.

On January 21, 1954, Cities wrote a letter to each of the defendants with respect to the Kansas Commission order. After stating that Cities had filed suit to obtain judicial review of the order, Cities notified the defendants that it intended to pay for gas purchased from the Hugoton Field in strict compliance with the terms of the order; that such compliance was made to avoid the penalties provided by the Kansas statutes for violation; and that payments to the defendants "are to be considered and accepted by you as involuntary payments on our part, without prejudice to our rights in said litigation * * *". Cities added:

"In the event the said Order is judicially modified or declared to be invalid in whole or in part, as a result of which you have been overpaid for gas purchased during the interim aforesaid, Cities Service Gas Company will expect you to refund to it the amount of said overpayments."

Each voucher check sent to each of the defendants in payment of gas purchased during the period involved in these suits contained a notation that payment was made subject to the provisions of the letter of January 21, 1954. Each defendant accepted its checks and cashed them, and made no objection to the conditions on which they were tendered.

For the sake of convenience we shall refer to these documents as "the refund contracts", recognizing that the defendants do not concede their legal effect.

On June 7, 1954, the Supreme Court of the United States, reversing a decision of the Federal Power Commission, held that

rates of "all wholesales of natural gas in interstate commerce," including rates of producers, were subject to the Commission's jurisdiction. *Phillips Petroleum Co. v. State of Wisconsin*, 347 *U. S.* 672, 74 *S. Ct.* 794, 98 *L. Ed.* 1035.

The Natural Gas Act requires natural gas companies to file rate schedules with the FPC, under such regulations as the Commission may prescribe. § 717c(c).

On July 16, 1954, the Commission issued order No. 174, later replacing it or supplementing it with orders No. 174-A and No. 174-B. These orders dealt with the regulation of "independent producers" under the Natural Gas Act. These producers were required to apply for certificates of public convenience and necessity, and were directed to file with the Commission "rate schedules as defined in Section 154.93 hereof, setting forth the terms and conditions of service and all rates and charges for such transportation or sale effective on June 7, 1954." By § 154.93 a rate schedule was defined as "the basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954."

Defendants duly filed the application and documents required. These documents included copies of the contracts with Cities, copies of the Kansas Price Order, and statements showing that the price to Cities on June 7, 1954, was 11¢ per M. c. f. at the specified pressure.

As these documents were filed, the Commission duly convened and voted to accept them for filing. The Commission so notified each defendant that its schedules had been accepted without constituting the acceptance as approval of any rate or charges, and without prejudice to any orders of the Commission that might affect the company so filing.

In 1956 the Supreme Court of Kansas sustained the validity of the Kansas Corporation Commission's order of December 2, 1953 (*Cities Service Gas Company v. State Corporation Commis-*

*sion of Kansas*, 180 *Kan.* 454, 304 *P.* 2d 528), but on appeal the Supreme Court of the United States on January 20, 1958, reversed (355 *U. S.* 391, 78 *S. Ct.* 381, 2 *L. Ed.* 2d 355), citing the *Phillips* decision and the decision in *Natural Gas Pipe Line Co. v. Panoma Corporation*, 1955, 349 *U. S.* 44, 75 *S. Ct.* 576, 99 *L. Ed.* 866.

In the *Panoma* case the Supreme Court had held in 1955 that a similar price fixing order of the Oklahoma Corporation was void. From the dissenting opinion of Mr. Justice Douglas, it seems clear that the order was held void *ab initio*.

Applying these decisions the Supreme Court of Kansas on April 11, 1959, held that the Kansas Commission's order was void *ab initio*. 184 *Kan.* 540, 337 *P.* 2d 640.

In 1958 Cities filed the four suits which are now before us. The complaints are substantially the same. They set forth the original gas contracts between the parties; the facts concerning the issuance of the Kansas price-fixing order; the refund contracts; the increased prices for gas effected by the Kansas order; and the invalidation of that order by the Supreme Court of the United States.

By reason of these facts, it is alleged that defendants agreed in writing to refund plaintiff the over-payments; that such payments were made under compulsion; that defendants are justly indebted to plaintiff in the amount of such overpayments; and that to permit defendants to retain such overpayments would constitute unjust enrichment.

The answers deny the legal effect of the refund contracts and deny that the payments were made involuntarily. The answers further set forth the facts with respect to the assumption of jurisdiction over defendants' rates of the Federal Power Commission and the filing of defendants' rate schedules, and their acceptance by the Commission. The answers further allege that the filed rate has never been decreased; that the exclusive means

authorized by the Natural Gas Act and the rules of the Commission have never been utilized to contest or challenge the rate schedules; and that the rate schedules have at all times remained the legally effective rate for the sales of gas by defendants to Cities.

Subsequently the parties supplemented the record by discovery proceedings and by affidavit, and the defendants moved for summary judgment. The grounds for the motion were that the only lawful price for the sales of natural gas during the period prior to July 16, 1954, was that fixed by the Kansas order; and that during the period after July 16, 1954, the only lawful price was that fixed by the rate filed and accepted by the Commission.

Defendants' contention in support of this motion was stated in the alternative: If Cities was seeking to recover payments in excess of the contract price, it had no case, since the only lawful price for gas sold by them during the periods in question was fixed by the Kansas price order and by the rate schedules filed by the Commission. If, on the other hand, the Natural Gas Act excluded the Kansas order, then Cities was seeking to recover payments allegedly in excess of natural gas rates, in which event jurisdiction to determine the claims was vested exclusively in the federal courts by the express provisions of the Natural Gas Act.

The trial court held that the actions were suits founded on the contracts to refund excessive payments, and not on the Natural Gas Act. Agreeing with the defendants that the only legal rate is the filed rate, it held that the contract action could be maintained if it is not inconsistent with federal law or regulation. It further held that as a matter of law the only lawful filed rate is the contract rate—a ruling that the defendants assail as unnecessary because they had not tendered such an issue.

Defendants bring these rulings before us by way of a petition for a writ of prohibition.

Basic to defendants' case (in whatever form developed) is the question of jurisdiction. Has a state court jurisdiction to entertain the actions?

Section 22 of the Natural Gas Act (15 *U. S. C. A.* § 717u) provides in part:

"The District Courts of the United States, the District Court of the United States for the District of Columbia, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this act or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this act or any rule, regulation, or order thereunder."

Does Cities seek to enforce a "liability or duty created by" the Act? In form, at least, its action is clearly one based on the refund contracts—not upon the contracts filed with the Commission, but upon the refund contracts by which the defendants agreed to make restitution.

But the defendants insist that, whatever the form of these actions, they are in effect actions for charges allegedly in excess of a filed rate, and therefore seek to enforce a liability created by the Act. Defendants do not point to any provision of the Act specifically authorizing suits to recover overpayments of gas rates, such as found in the Interstate Commerce Act. Their argument runs as follows:

The filed rate, defendants say, is the only lawful rate; by federal law no deviation from it is permitted; if more or less than the filed rate is paid, such payment is a violation of federal law, and a suit to redress the wrong may be brought only in the federal courts. Hence (defendants seem to say) the refund contracts have no validity in themselves as a ground for a common law action in the state courts; any rights that Cities may

have in its present situation flow from the rate provisions of the Natural Gas Act.

This leads to the question: To what extent does the Act impair the validity of private contracts relating to gas rates?

It is authoritatively settled that the Natural Gas Act, unlike the Interstate Commerce Act, does not abrogate private rate contracts as such. *United Gas Pipe Line Company v. Mobile Gas Service Corp.*, 350 *U. S.* 332, 76 *S. Ct.* 373, 378, 100 *L. Ed.* 373. In that case the gas contract between United and Mobile had been duly filed with the FPC. Later Mobile attempted to change the rate fixed in the contract by filing a new rate schedule. The Commission accepted it, holding that it would become effective unless after investigation the Commission should determine it to be unlawful. The Supreme Court held that the rate could not be so changed by unilateral action. The Court said:

"In construing the Act, we should bear in mind that it evinces no purpose to abrogate private rate contracts as such. To the contrary, by requiring contracts to be filed with the Commission, the Act expressly recognizes that rates to particular customers may be set by individual contracts. In this respect, the Act is in marked contrast to the Interstate Commerce Act, which in effect precludes private rate agreements by its requirement that the rates to all shippers be uniform, a requirement which made unnecessary any provision for filing contracts."

Referring to the provisions of Sections 4 and 5 of the Act, relating to changes in rates and to the regulatory powers of the Commission, the Court also said:

"These sections are simply parts of a single statutory scheme under which all rates are established initially by the natural gas companies, by contract or otherwise, and all rates are subject to being modified by the Commission upon a finding that they are unlawful. The Act merely defines the review powers of the Commission and imposes such duties on natural

gas companies as are necessary to effectuate those powers; it purports neither to grant nor to define the initial rate-setting powers of natural gas companies."

In the cases at bar the gas purchase contracts were duly filed, along with the Kansas price-fixing order. Cities never agreed to the increased rate set by that order, so that the filing of the order by the defendants was not an agreed change in the rate.

Moreover, it has been authoritatively settled that the Kansas order was void *ab inito*, as above set forth. And the federal courts have also held that the effect of that holding was to leave the contract rate as the only lawful rate. In *Natural Gas Pipeline Company v. Federal Power Commission*, 3 Cir., 253 F. 2d 3, 7, the distributor assailed an order of the FPC directing the filing of an increased rate based on a price-fixing order of the Oklahoma Corporation Commission, later held invalid by the Supreme Court. In reviewing the Commission's order the Third Circuit Court of Appeals said:

"The contract rate could only be changed, then, (unless the parties consented) after a hearing by the Commission as to its lawfulness unless, as set out in the agreement itself, a valid law and lawful orders of regulatory bodies having jurisdiction over the parties affected it. It was expressly because of these elements that Natural, after the Oklahoma Commission had established a minimum rate and while its lawfulness was being litigated, paid the state-fixed purchase price under protest. When the United States Supreme Court found Oklahoma's action to have been unlawful and set the state commission order aside, there was no longer even the semblance of a valid law, or lawful order which would modify the contract rate. The contract rate, therefore, under the mandate of the Supreme Court must be held to have been the rate effective on June 7, 1954."

A similar holding is found in *Cities Service Gas Co. v. Federal Power Commission*, 10 Cir., 255 F. 2d 860.

If under the Natural Gas Act a gas producer and a distributor may agree to fix the rate, and from time to time to change it, absent any proceeding before the Commission to regulate the rate, why may they not agree that the rate to be paid shall be the contract rate if the rate imposed by a State Commission shall be held invalid? This, in effect, was what the parties here agreed upon.

If so, it seems to us that the claims here are not founded upon any liability *created* by the Natural Gas Act, but upon a private contract deriving its force from state law.

It is certainly true that the adjudication of these claims does entail an examination of the provisions of the Natural Gas Act, the regulations of the Commission, and the applicable federal decisions. But these have been brought into the cases by way of defense to complaints which, on their face, are based on nothing more than contracts to refund amounts measured by the contract or "filed" rate and the rate fixed by the Kansas order. The general rule is that in such a case the plaintiff's suit is not one arising under federal law. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 *U. S.* 667, 70 *S. Ct.* 876, 94 *L. Ed.* 1194. Cases involving patents supply familiar examples of this principle. See annotation in 167 *A. L. R.* p. 1114.

There is no issue here of the reasonableness of the rate, nor any attempt to "adjudicate" a proper rate, as the defendants argue.

We are not cited to any decision of the Supreme Court of the United States authoritatively settling the question before us. There are, however, three decisions of the federal district courts involving suits brought in the state courts to recover excess payments of gas rates made under circumstances similar to those in the cases at bar. In each case the defendants attempted to remove the case to the federal court. In *Cities Service Gas Co. v. Skelly Oil Co.*, D. C. Del. 1958, 165 *F. Supp.* 31, 34, Judge Layton held that the suit was not one founded upon the Natural Gas

Act, but a contract action based upon letters interchanged by the parties. He added:

"Now, it is conceded that in order to determine the exact amounts due, as well as other relevant questions, a construction of the Natural Gas Act and of the Commission Rules may have to be resorted to. But as said in the *Winsor* case, 'Nor, * * * is the fact that a federal law may or will be drawn into construction during the course of the litigation sufficient to support jurisdiction in a federal court.' "

To the same effect is *Northern Natural Gas Co. v. Cities Service Co.*, ...... *F. Supp.* ......, decided by the United States District Court of Iowa, June 30, 1959, and *Pan American Petroleum Corporation v. Cities Service Gas Co.*, —— *F. Supp.* ——, decided by the District Court of Kansas. In the latter case, as in these cases, the Kansas Corporation Commission price-order had been filed with the Commission. The Court, citing the decision of the Supreme Court respecting the effect of private contracts fixing initial rates, noted that the Commission had taken no action to change the contract rate. The court also held that the Kansas Commission had no power to modify the terms of the original agreement, and further said:

"In view of these decisions, it is clear that there is no federal question presented relative to the order of the Kansas Corporation Commission raising the contract price to 11¢, and the unilateral rate change by the Federal Power Commission. Since the law is settled, there is no federal question."

Defendants say that these are removal cases, merely directing remand, and therefore not affirmative holdings sustaining the jurisdiction of the state courts. The distinction is not convincing. At the moment, they furnish a persuasive guide to a state court confronted with a novel question not authoritatively settled by the Supreme Court. We think that we should follow their reasoning.

In support of their contention that the Natural Gas Act creates the liability in the cases before us, defendants cite decisions arising under the Interstate Commerce Act. In view of the decision in the *Mobile* case, we think them inapplicable.

The conclusion that the Natural Gas Act is not inconsistent with private contracts for restitution of overpayments in cases such as those before us finds support in the case of *Natural Gas Pipeline Co. of America v. Harrington*, 5 *Cir.*, 1957, 246 *F.* 2d 915. That decision sustained an action for restitution of the difference between the contract rate and the price paid by Natural in compliance with an order of the Oklahoma Corporation Commission that was later declared invalid.

The Court said that any price in excess of the contract rate was "contrary to the spirit, if not the letter" of the Natural Gas Act; but it is clear to us that the Court did not hold that liability in such a suit was created by the Act; on the contrary, it clearly recognized the action as one founded on common law principles of restitution.

Defendants say that this case is not in point, because the gas contract and Oklahoma price order had not been filed with the Commission; but the Court of Appeals held that this failure did not prevent the jurisdiction of the Commission from attaching, and that the contract rate became the only lawful rate until changed by order of the Commission. On the latter point, see also *Interstate Natural Gas Co. v. Southern California Gas Co.*, 9 *Cir.*, 1953, 209 *F.* 2d 380.

Defendants point to 4(a) of the Act, and to § 154.21 of the Commission's regulations, embodying the requirement for reasonable rates and the prohibition against unreasonable rates. The argument seems to be that these provisions create a liability for repayment of the amounts of excessive charges. This argument is, we think, foreclosed by the decisions in *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 *U. S.* 246, 71 *S. Ct.* 692, 95 *L. Ed.* 915, and *T. I. M. E. Inc. v.*

*United States,* 359 *U. S.* 464, 79 *S. Ct.* 904, 3 *L. Ed.* 2d 952. The latter case involved the Motor Carrier Act of 1935; the former the Natural Gas Act. In the *Montana-Dakota* case the Court, referring to the statutory requirement of reasonableness, said [341 *U. S.* 246, 71 *S. Ct.* 695]:

"But the prescription of the statute is a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce."

This holding was reaffirmed in the *T. I. M. E.* case.

One of the defendants urges that the *T. I. M. E.* case, which holds that there is no common law right of action for unreasonable rates under the Motor Carrier Act, is applicable to the cases before us. Since these actions are based on private contracts, we do not think that the holding in the *T. I. M. E.* case applies.

The *Montana-Dakota* case, cited above, is relied on by defendants as authority for the general proposition that "the right to a reasonable rate is the right to the rate which the Commission files or fixes, and that, accept for review of the Commission's orders, the courts can assume no right to a different one." In that case the Supreme Court considered a complaint alleging fraud in preventing plaintiff from pursuing before the Federal Power Commission its remedy for a reasonable rate. The case, as we read it, holds that, on an issue of the reasonableness of the rate, the jurisdiction of the Commission is exclusive. But here, as above noted, there is no issue of the reasonableness of the filed rate.

Defendants cite our own decisions refusing in corporate election proceedings to adjudicate claimed violations of the proxy rules of the Securities and Exchange Commission in respect to the solicitation of stock proxies.

*Investment Associates Inc. v. Standard Power & Light Corporation,* 29 *Del. Ch.* 225, 48 *A.* 2d 501, *affirmed* 29 *Del. Ch.* 593, 51 *A.* 2d 572, was such a case. The Vice Chancellor first held

that exclusive jurisdiction to determine the validity of the proxy was vested in the federal courts, and that in any event, because of the need of uniformity in applying the act, the state courts would not entertain such a challenge. The decision was affirmed. It was later followed in *American Hardware Corporation v. Savage Arms Corporation, Del.*, 136 *A.* 2d 690.

In those cases we were asked to adjudicate a violation of regulations under the Securities act; here we are not asked to adjudicate any violation of the Natural Gas Act, or, in our opinion, to enforce a liability created by that Act.

Defendants argue that Cities had a remedy before the Commission. Cities should, it is said, have attacked directly the filing of the Kansas price order as a part of the rate schedules, as it did in the *Magnolia* case (*Cities Service Gas Co. v. Federal Power Commission*) 10 *Cir.*, 255 *F.* 2d 860.

The rule requiring the exhaustion of administrative remedies would certainly be applicable to a suit in the federal court attacking the reasonableness of the rate, but we think it inapplicable here, since no attack is made upon the "filed rate", which the federal courts have held to be the gas contract rate.

Defendants say that in any event Cities in attempting to attack collaterally the "filed rate", and that, whether right or wrong, the rate accepted for filing by the Commission, including the Kansas order, is the effective filed rate, and Cities is bound by it until it succeeds in having the Commission change it.

The difficulty with this argument is, once again, that the federal courts have authoritatively held that the Kansas price-fixing order was void *ab initio* because the Natural Gas Act had pre-empted the field. Being void the unilateral filing of the order as part of the rate schedules was a nullity. This is not our adjudication; it is the adjudication of the federal courts.

Defendants cite *Federal Power Commission v. Interstate Natural Gas Co.*, 336 *U. S.* 577, 69 *S. Ct.* 775, 93 *L. Ed.* 895, as

holding that claims for refunds from regulated gas companies are determinable solely with reference to federal law. The case concerned a fund accummulated during litigation over Interstate's rates, which had been reduced by order of the Commission. The issue was whether the fund should go solely to four pipeline companies or (at least in part) to their customers who were the ultimate consumers of the gas. The Supreme Court held that the distribution of the fund was governed by federal law and that the lower federal courts should determine the distribution between those entitled. The case does not seem to us to touch the point before us.

It is true that if Cities should recover the money for which it sues the distribution of the fund would be subject to the orders of the Federal Power Commission. See 15 *F. P. C.* 1448, 1453. But we do not understand the defendants to contend that the Commission is vested with power to enforce refund contracts of the kind here sued on.

Defendants seek to build an argument upon the general proposition that the Natural Gas Act leaves no room for common law obligations to do that which the Act itself requires.

This argument seems to us to assume the very point in issue, that is whether the Act itself creates the liability here sued on. This is the basic question in the case.

One final observation must be made. A great deal of argument in the defendants' briefs is directed to an attempted limitation of the issues before the Superior Court and the issues before this Court. Most of this argument seems to us to miss the point. The substantial question which emerges, in one form or another, is whether the state courts have jurisdiction to entertain the suits on the refund contracts.

For the reasons above stated, we are of opinion that such jurisdiction exists.

The petition for a writ of prohibition is denied.