No. 41,284

CITIES SERVICE GAS COMPANY, a Corporation, *Appellee,* v. STATE CORPORATION COMMISSION OF KANSAS, MARION BEATTY, Chairman, RICHARD C. BYRD and HARRY G. WILES, as Members of Said Commission, and Their Respective Successors in Office, *Appellants.*

(337 P. 2d 640)

Opinion filed April 11, 1959.

*Clyde E. Milligan,* general counsel, State Corporation Commission, of Topeka, and *Wayne Coulson,* special counsel, of Wichita, argued the cause, and *Dale M. Stucky,* special counsel, of Wichita, was with them on the briefs for the appellants.

*Mark H. Adams,* of Wichita, and *Joe Rolston,* of Oklahoma City, Oklahoma, argued the cause, and *M. F. Cosgrove* and *Clayton E. Kline,* both of Topeka,

and *Conrad C. Mount, O. R. Stites,* and *Charles V. Wheeler,* all of Oklahoma City, Oklahoma, were with them on the brief for the appellee.

*John Anderson, Jr.,* attorney general, as *amicus curiae,* with whom the attorneys general of the states of Arkansas, Colorado, New Mexico, North Dakota, Oklahoma, Wyoming, Utah, and Texas joined in the brief.

The opinion of the court was delivered by

JACKSON, J.: In this appeal, appellants seek to have the court examine the mandate of the Supreme Court of the United States which reversed the decision of this court when the instant case was before the court in 1956 as found in *Cities Service Gas Co. v. State Corporation Commission,* 180 Kan. 454, 304 P. 2d 528. Since the detailed facts of this case were completely set forth in our former opinion, we shall not burden the record by detailing them here.

In our former decision the court held valid the order of the State Corporation Commission fixing a minimum price of eleven cents per thousand cubic feet, 14.65# p. s. i. a., at the wellhead for all persons, firms or corporations taking natural gas or causing gas to be taken from the Hugoton gas field in Kansas on or after January 1, 1954. As noted above, this decision was reversed by the Supreme Court of the United States in a per curiam opinion found in *Cities Service v. State Comm'n,* 355 U. S. 391, 2 L. Ed. 2d 355, 78 S. Ct. 381, rehearing denied 355 U. S. 967, 2 L. Ed. 2d 542, 78 S. Ct. 531, upon the basis that the regulation of the price of natural gas at the wellhead was within the exclusive jurisdiction of the Federal Power Commission.

The appellants here have urged the court that the Federal Power Commission did not take jurisdiction over the pricing of natural gas at the wellhead until June 7, 1954; that the production of gas at the well is not a matter of interstate commerce although it must be conceded that a price for such gas will be reflected in the prices charged for gas in interstate commerce and therefore, the price at the wellhead must be conceded to affect interstate commerce as that term is used in constitutional law. The corporation commission points out that at the time its order went into force on January 1, 1954, the Federal Power Commission had not exercised any authority over the price of natural gas at the wellhead in the Hugoton field, and that therefore, since the natural gas was not yet in interstate commerce, the state had power to regulate the price until the Federal Power Commission occupied the field citing

*Missouri Pacific Ry. v. Larabee Mills,* 211 U. S. 612, 53 L. Ed. 352, 29 S. Ct. 214, and other cases.

The trouble with this contention is that our former decision was made in 1956 long after the decision of the case of *Phillips Petroleum Co. v. Wisconsin,* 347 U. S. 672, 98 L. Ed. 1035, 74 S. Ct. 794. In that case, the Supreme Court of the United States held that sales of natural gas owned by an independent producer at the mouth of an interstate pipe line were subject to regulation by the Federal Power Commission under the natural gas act of 1938. This case was decided on June 7, 1954, and it was after this decision that the Federal Power Commission began to assert authority to regulate the price of natural gas in Hugoton field. This court was not unmindful of that decisionn or of the dissent of Mr. Justice Douglas therein in which he said:

"There are practical considerations which buttress that position and lead me to conclude that we should not reverse the Commission in the present case. If Phillips' sales can be regulated, then the Commission can set a rate base for Phillips. A rate base for Phillips must of necessity include all of Phillips' producing and gathering properties; and supervision over its operating expenses necessarily includes supervision over its producting and gathering expenses. We held in *Colorado Interstate Gas Co. v. Federal Power Commission,* 324 U. S. 581, that the Commission's control extended that far in the case of an interstate pipeline company which owned producing and gathering properties. And so it had to be, if regulation of the pipelines that owned their own gas supplies was to be effective. But an understanding of what regulation entails should lead to a different result in this case. The fastening of rate regulation on this *independent producer* brings 'the production or gathering of natural gas' under effective federal control, in spite of the fact that Congress has made that phase of the natural gas business exempt from regulation. The effect is certain to be profound. The price at which the *independent producer* can sell his gas determines the price he is able or willing to pay for it (if he buys from other wells). The sales price determines his profits. And his profits and the profits of all the other gatherers, whose gas moves into the interstate pipelines, have profound effects on the rate of production, the methods of production, the old wells that are continued in production, the new ones explored, etc. Regulating the price at which the *independent producer* can sell his gas regulates his business in the most vital way any business can be regulated. That regulation largely nullifies the exemption granted by Congress." (pp. 689-690.)

It might be said further that this court was not unmindful of the decision in *Natural Gas Co. v. Panoma Corp.,* 349 U. S. 44, 99 L. Ed. 866, 75 S. Ct. 576 where the Supreme Court of the United States held that:

"A State may not fix a minimum price to be paid for natural gas, after its production and gathering has ended, by a company which transports the gas

for resale in interstate commerce; *because such sale and transportation are subject to regulation by the Federal Power Commission exclusively."* (Italics supplied.)

In fact, this court also was cognizant of the warning of the United States Supreme Court in the case of *Cities Service Co. v. Peerless Co.,* 340 U. S. 179, 95 L. Ed. 190, 71 S. Ct. 215, in which after holding a similar order of the state of Oklahoma valid in relation to due process as to a minimum price for natural gas at the wellhead, the court observed:

"Appellant does not contend that the orders conflict with the federal authority asserted by the Natural Gas Act, 52 Stat. 821 (1938), 15 U. S. C. §§ 717 *et seq.* (1948). The Federal Power Commission has not participated in these proceedings. Whether the Gas Act authorizes the Power Commission to set field prices on sales by independent producers, or leaves that function to the states, is not before this Court." (p. 188.)

Despite all of these warnings and questions, this court in its former decision in this case felt that in view of the provisions of the natural gas act, the state still had a right to use the fixing of a minimum price at the wellhead as a means of conservation in the production of natural gas. The important question and the decision thereof by this court in its former opinion reads as follows:

"It suffices to say, that after a careful analysis thereof, we have no difficulty in construing its terms to mean that no person, firm or corporation—first of all the producer—can lift or take gas in its natural state from the depths of the Hugoton Field to a point further than the wellhead without, as a condition precedent to its withdrawal from the common source of supply, first attributing thereto a minimum price of not less than eleven cents per M. c. f. (14.65# p. s. i. a.). So construed, recognizing as we must that under our own decisions (*Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* supra; *La Harpe v. Gas Co.,* supra) as well as those of the highest court of the land (see, e. g., *Thompson v. Consolidated Gas Co.,* 300 U. S. 55, 81 L. ed. 510, 57 S. Ct. 364; *Interstate Gas Co. v. Power Comm'n,* 331 U. S. 682, 91 L. ed. 1742, 67 S. Ct. 1482; *Cities Service Co. v. Peerless Co.,* 340 U. S. 179, 95 L. ed. 190, 71 S. Ct. 215; *Phillips Petroleum Co. v. Oklahoma,* 340 U. S. 190, 95 L. ed. 204, 71 S. Ct. 221) the Commission has power to regulate the physical production and gathering of natural gas in the interest of conservation, including the protection of correlative rights and the prevention of waste, the involved order falls squarely within the hereinafter emphasized excluding provisions of the Natural Gas Act (15 U. S. C. A. § 717[b]) which reads:

" 'The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, *but shall not apply* to any other transportation or sale of natural gas

or to the local distribution of natural gas or to the facilities used for such distribution *or to the production or gathering of natural gas.*' (Emphasis supplied.)

"Thus, based on our construction of the order and since the Federal Act, as heretofore quoted, expressly provides that its terms shall not apply to the production of natural gas, it appears the trial court did not err in concluding the Commission's order should be upheld and sustained." (pp. 461-462.)

The decision by this court was reversed by the Supreme Court of the United States, see *supra,* the entire opinion reading as follows:

"PER CURIAM.

"The judgment is reversed. *Phillips Petroleum Co. v. Wisconsin,* 347 U. S. 672; *Natural Gas Pipeline Co. v. Panoma Corporation,* 349 U. S. 44."

In reversing this holding, we understand the Supreme Court of the United States to hold that on January 1, 1954, the State of Kansas had no jurisdiction to regulate the price of natural gas as it came out of the gas well since that price would affect interstate commerce and the jurisdiction of the Federal Power Commission. Besides the other cases cited above, we are referred to the case of *Natural Gas Pipeline Co. of America v. Harrington,* 246 F. 2d 915, rehearing denied 253 F. 2d 231, certiorari denied 356 U. S. 957, 2 L. Ed. 2d 1065, 78 S. Ct. 992, in which we are shown that the second petition for rehearing raised before the court of appeals the question of the power of the state to regulate the price of natural gas until the Federal Power Commission had taken action. The court of appeals held that this question had been foreclosed by the decisions of the Supreme Court cited above and denied the rehearing.

It is felt that nothing is to be gained by laboring this question further. The question of the validity of the order of the corporation commission on January 1, 1954, was inherent in our former decision.

The mandate of the Supreme Court of the United States described our former decision as follows:

". . . wherein the judgment of said Supreme Court affirming the judgment of the District Court of Finney County, Kansas, which upheld the validity of the State Corporation Commission order fixing a minimum price of eleven cents per thousand cubic feet, 14.65# p. s. i. a., at the wellhead for all persons, firms, or corporations taking gas or causing gas to be taken from the Hugoton Gas Field in Kansas on or after January 1, 1954, was duly entered on the 8th day of December A. D., 1956.

.     .     .     .     .     .     .     .     .     .     .     .     .

"It is ordered and adjudged by this Court that the judgment of the said Supreme Court in this cause be, and the same is hereby, reversed with costs."

Any question of the meaning of the order of that court should have been raised with that court by the parties to that appeal. We have not been advised whether appellants raised the point on re-

hearing which they now seek to inject into the case. From what has been said, it follows that the order of the district court now appealed from must be affirmed.

It is so ordered.

FATZER, J., dissenting: With profound respect, I express my disagreement with the court's holding that the reversal of *Cities Service Gas Co. v. State Corporation Commission,* 180 Kan. 454, 304 P. 2d 528, by the *per curiam* opinion in *Cities Service v. State Comm'n,* 355 U. S. 391, 2 L. Ed. 2d 355, 78 S. Ct. 381, rehearing denied 355 U. S. 967, 2 L. Ed. 2d 542, 78 S. Ct. 531, requires the conclusion that the Kansas order in question was void *ab initio* on January 1, 1954.

Press of work makes impossible an extended dissenting opinion, but I feel obligated to state my views to the extent time permits.

The constitution of the United States established a federal system of dual sovereignty. For purposes here concerned, federal jurisdiction consists of that conferred by the constitution and valid congressional enactments. Governmental powers not conferred upon the federal government by the constitution are reserved to the states respectively, or to the people. An essential feature of our dual system is that in some areas federal jurisdiction is exclusive; in others, state jurisdiction is exclusive, and still in others, federal and state jurisdiction is concurrent.

Situations of federal jurisdiction which led, to some extent, to the passage of the Natural Gas Act of June 21, 1938 (Ch. 556, 52 Stat. 821, 15 U. S. C. A. § 717) are found in *Missouri v. Kansas Gas Co.,* 265 U. S. 298, 68 L. Ed. 1027, 44 S. Ct. 544, and *Pub. Util. Comm. v. Attleboro Co.,* 273 U. S. 83, 71 L. Ed. 549, 47 S. Ct. 294. Both cases held that exclusive jurisdiction over the rates of gas or electricity moving in interstate commerce was vested in the federal government by the constitution.

The legislative history of the Natural Gas Act has been detailed in a whole series of decisions by the supreme court of the United States (*Illinois Gas Co. v. Public Service Co.,* 314 U. S. 498, pp. 506-508, 86 L. Ed. 371, pp. 376, 377, 62 S. Ct. 384; *Power Comm'n v. Hope Gas Co.,* 320 U. S. 591, pp. 609-613, 88 L. Ed. 333, pp. 348-350, 64 S. Ct. 281; *Interstate Gas Co. v. Power Comm'n,* 331 U. S. 682, pp. 689, 690, 91 L. Ed. 1742, pp. 748, 749, 67 S. Ct. 1482; *Panhandle Pipe Line Co. v. Comm'n,* 332 U. S. 507, pp. 514-524, 92 L. Ed. 128, pp. 136-141, 68 S. Ct. 190; *Power Comm'n v. Pan-*

*handle Co.,* 337 U. S. 498, pp. '502-515, 93 L. Ed. 1499, pp. 1503-1510, 69 S. Ct. 1251). The principal function of the Act is to fix "just and reasonable" rates to protect consumers against exploitation at the hands of natural gas companies. However, in each of those cases it was specifically stated that, by the enactment of the Natural Gas Act, Congress did not intend the federal government to occupy the entire field of concurrent jurisdiction to the exclusion of the states and that state regulation of conservation of natural gas remain unimpaired. Illustrative of this fact is *Power Comm'n v. Panhandle Co.,* supra, wherein it was said:

". . . The Natural Gas Act was designed to supplement state power and to produce a harmonious and comprehensive regulation of the industry. Neither state nor federal regulatory body was to encroach upon the jurisdiction of the other. Congress enacted this Act after full consideration of the problems of production and distribution. It considered the state interests as well as the national interest. It had both producers and consumers in mind. Legislative adjustments were made to reconcile the conflicting views." (p. 513.)

In the Hope case, *supra,* it was held that the act conferred *no* federal power to use price as a conservation tool (pp. 608-610). On the other hand, it was specifically held in *Cities Service Co. v. Peerless Co.,* 340 U. S. 179, 95 L. Ed. 190, 71 S. Ct. 215, that the constitution did not preclude state power to use minimum wellhead *price* as a conservation tool. Thus, even after the Natural Gas Act was passed, state, and not federal power, had exclusive jurisdiction to use price as a *conservation* tool. There could be no conflict in the area of conservation. Hence, the state's use of wellhead price as a conservation tool could *only* conflict with federal authority if it hampered traditional federal *utility* regulation over wellhead price in determining just and reasonable rates for the purchase, transportation and sale of natural gas in interstate commerce for resale.

We have here the clearest possible example of a gas field over which there is concurrent state and federal jurisdiction. The state's power of conservation may be freely exercised unless and until it conflicts with the Federal Power Commission's jurisdiction in fixing just and reasonable utility rates for interstate pipe-line companies, as well as independent natural gas producers, for gas sold in interstate commerce and transported for resale in other states. The Kansas minimum wellhead price order operated only at the wellhead as a conservation measure, and only upon the producer. The Federal Power Commission first exercised jurisdiction over the wholesale of gas by independent producers on July

16, 1954, by its order No. 174 following *Phillips Petroleum Co. v. Wisconsin*, 347 U. S. 672, 98 L. Ed. 1035, 74 S. Ct. 794, decided June 7, 1954. But, conflict between the two orders could not have antedated July 16, 1954, since the Federal Power Commission was given no power to reduce rates retroactively (15 U. S. C. A. § 717 [d]), (*Power Comm'n v. Hope Gas Co.*, supra; *Cities Service Gas Producing Co. v. Federal Power Com'n*, 233 F. 2d 726, p. 730).

With actual exercise of jurisdiction over independent producers by the Federal Power Commission already in effect, the supreme court of the United States reversed our decision in *Cities Service v. State Comm'n*, supra. The opinion simply states:

"PER CURIAM.
"The judgment is reveresd. *Phillips Petroleum Co. v. Wisconsin*, 347 U. S. 672; *Natural Gas Pipeline Co. v. Panoma Corporation*, 349 U. S. 44."

The Phillips and Panoma cases each involved natural gas moving in interstate commerce *after both production and gathering had been completed.* We are left in the dark as to the supreme court's theory of the application of the rule of those cases to wellhead sales of natural gas governed by the Kansas minimum price order. It seems to me those cases fall in the class of *Missouri v. Kansas Gas Co.*, supra, and *Pub. Util. Comm. v. Attleboro Co.*, supra; a category over which the states never had jurisdiction.

Phillips decided that the Federal Power Commission had jurisdiction of the rates of all wholesales of natural gas in interstate commerce for resale, and by the time of Panoma (decided April 11, 1955) it had assumed that jurisdiction.

Had an opinion been written in our case (*Cities Service v. State Comm'n*, supra), the present controversy would likely have been decided before it arose, but, in the absence of an opinion, we are compelled to decide as best we can whether state power to establish a minimum wellhead price as a conservation measure was suspended by mere passage of the Natural Gas Act in 1938, or whether it became suspended when the Federal Power Commission first assumed jurisdiction over independent producers on July 16, 1954. The Natural Gas Act permitted the exercise of jurisdiction in the Federal Power Commission's discretion at any time *after* 60 days from June 21, 1938, as the commission should designate (15 U. S. C. A. § 717 [c]). But, for a period of sixteen years federal power remained dormant. During that period hundreds of gas wells were drilled and gas sale and purchase contracts were entered into in good faith without Federal Power Com-

mission approval or apparent need therefor. To hold that the Natural Gas Act was self-executing and in and of itself subjected wellhead sales to federal utility regulation is to indelibly impress the taint of illegality on all acts done by parties to those many contracts and renders them unenforceable by either buyer or seller. The Federal Power Commission was the agency designated by Congress to exercise and assert federal jurisdiction, and, until it did so, valid state conservation regulations, although based upon minimum wellhead price, were valid and enforceable. In the absence of the exercise of federal jurisdiction, and in the light of local exigencies, a state is free to act in order to protect its legitimate interests even though interstate commerce is directly affected (*Eichholz v. Comm'n*, 306 U. S. 268, 83 L. Ed. 641, 646, 59 S. Ct. 532).

In my judgment, the Kansas order was a valid exercise of the regulatory power of the state until suspended and made inoperative by the Federal Power Commission's exercise of its paramount authority on July 16, 1954. Such a construction is consistent with the authorities cited above and permits an orderly, uniform and consistent pattern of state, followed by federal, regulation of *price* of natural gas at the wellhead. A contrary decision creates a gap between the exercise of valid state and valid federal regulatory power; renders a state powerless to exercise regulatory power over matters of local concern because of the possibility of subsequent judicial determination of "direct and positive" conflict with the "dormant and unexcercised" regulatory power of a federal agency, and casts doubt upon and clouds the validity of presently existing state laws. In *Missouri Pacific Ry. v. Larabee Mills*, 211 U. S. 612, p. 623, 53 L. Ed. 352, 29 S. Ct. 214, it was said:

". . . the mere grant by Congress to the commission of certain national powers . . . does not of itself and in the absence of action by the commission interfere with the authority of the State to make those regulations conducive to the welfare and convenience of its citizens. . . ." (p. 623.)

To the same effect are *N. W. Bell Tel. Co. v. Ry. Comm'n*, 297 U. S. 471, 80 L. Ed. 810, 56 S. Ct. 536; *Welch Co. v. New Hampshire*, 306 U. S. 79, 83 L. Ed. 500, 59 S. Ct. 438, and *Eichholz v. Comm'n*, supra.

The reversal of our case by the supreme court of the United States unquestionably determined that the Kansas order was invalid because of conflict with the *exercise* of federal jurisdiction under the Natural Gas Act. Except for one possessing powers of clairvoyance the case decided nothing more. More specifically,

it did not decide, in my judgment, *when* conflict between state and federal jurisdiction arose. The effect of the reversal must be determined in light of the rules of the supreme court of the United States as to its own judgments. Two rules have been consistently stated: (1) Cases are decided upon the basis of the situation existing at the date of decision, taking into account both factual and legal changes in circumstances pending the proceedings (*Watts, Watts & Co. v. Unione Austriaca & c.*, 248 U. S. 9, 63 L. Ed. 100, 39 S. Ct. 1; *Vandenbark v. Owens-Illinois Co.*, 311 U. S. 538, 85 L. Ed. 327, 61 S. Ct. 347), and (2), *reversals determine only questions discussed and decided* (*Wolff Packing Co. v. Indus. Court*, 267 U. S. 552, 69 L. Ed. 785, 45 S. Ct. 441; *Schuylkill Trust Co. v. Penna.*, 302 U. S. 506, 82 L. Ed. 392, 58 S. Ct. 295).

With respect to those rules, what was the federal question presented and decided in *Cities Service v. State Comm'n*, supra? That question was succinctly stated by Cities Service in its notice of appeal to the supreme court of the United States in that case, as follows:

"III

"The following Federal question only is presented by this appeal:

"Whether the State Corporation Commission of Kansas has the jurisdiction and authority, in face of the provisions of the Natural Gas Act (15 U. S. C. A. 717, 62 Stat. 821), *and the jurisdiction of the Federal Power Commission thereunder*, to fix a minimum price for natural gas produced and sold in the Kansas-Hugoton Gas Field by producers therein to Appellant, a natural gas company, either at the wellhead or in said field after production and gathering thereof has been completed, or both, for transportation and resale in interstate commerce, or to prohibit the production of such natural gas by said producer, or inflict severe penalties therefor, if the price fixed by such order for such gas is not paid by the purchaser or taker thereof to the producer." (Emphasis supplied.)

In its brief in the present appeal, Cities Service states:

"This was the question (quoted above) decided by the Court. . . ."

Thus, the *only* federal question presented in *Cities Service v. State Comm'n* and decided by the supreme court of the United States is the one quoted above. I do not believe it may be correctly stated that the federal question presented in that appeal involved the issue of *when* federal jurisdiction under the Natural Gas Act conflicted with the state conservation regulation in question. That point *was not* presented in that appeal and the judgment of reversal by the *per curiam* opinion may not, in my judgment, be

construed to indicate the Kansas order was invalid and unenforceable on January 1, 1954. While that date appears in the recitals of the mandate, the judgment portion of the mandate reversing our case was clear and unambiguous, and did not state that the Kansas order was void *ab initio* on January 1, 1954. As previously indicated, that precise question was not presented in that appeal.

I do not read a deviation from the foregoing conclusions into *Michigan Wis. Co. v. Corp. Comm'n*, 355 U. S. 425, 2 L. Ed. 2d 412, 78 S. Ct. 409. That case and the three decided with it were later appeals involving the order in *Natural Gas Co. v. Panoma Corp.*, 349 U. S. 44, 99 L. Ed. 866, 75 S. Ct. 576. Following reversal of Panoma by the supreme court of the United States, the supreme court of Oklahoma, conforming to the mandate, set aside the Oklahoma minimum price order as to sales *after gathering*, but left it in effect as to *wellhead* sales. Pending the second appeal to the supreme court of the United States in Panoma (*Michigan Wis. Co. v. Corp. Comm'n*, supra) the reversal of *Cities Service v. State Comm'n*, supra, determined that the holding of the first Panoma decision applied not only to the point where gathering ended, but extended to the point of production—the wellhead itself.

Since the sales involved in Panoma were not wellhead sales, the supreme court of Oklahoma apparently felt that the Panoma case left the status of the minimum *wellhead price* portion of the Oklahoma order still valid. In my judgment, the Michigan Wis. Co. case, deciding the second Panoma appeals, is similar to *Wolff Packing Co. v. Indus. Court*, supra. The procedure of determination by the state supreme court of questions not expressly decided by the previous reversal, was approved, but in making its second decision, the supreme court of Oklahoma made an erroneous decision on the merits, that is, that federal jurisdiction only extended to where gathering ended, which was again reversed on the merits (*Cities Service v. State Comm'n*, supra), and not for failure to comply with the mandate on the first appeal.

I agreeably accept decisions of the supreme court of the United States, but I do not believe that court has squarely determined the present question, however, my colleagues feel otherwise. If a majority were to agree with my conclusions, and we incorrectly decided that the judgment of reversal in our case (*Cities Service v. State Comm'n*, supra) did not import a determination that the Kansas minimum price order was void *ab initio* on January 1, 1954, our

error may readily be corrected upon appeal to the supreme court of the United States. On the other hand, if we forego that conclusion, out of an excess of caution to not intrude upon the mandate of the supreme court of the United States, our own error may be corrected only upon *certiorari*, in which the governing factors are not the correctness or incorrectness of our decision, but whether the question is of such national importance as to entitle the case to review in competition with hundreds of other cases.

Although fully cognizant of the holding and statements so ably set forth in the court's opinion, I would nevertheless reverse the judgment with instructions to vacate the State Corporation Commission's order from and after July 16, 1954, the date when the Federal Power Commission first exercised jurisdiction over independent gas producers in the Hugoton Gas Field following the decision in Phillips on June 7, 1954. As previously indicated, this conclusion permits an orderly, uniform and consistent pattern of state, followed by federal, regulation of price of natural gas at the wellhead.