**PAN AMERICAN PETROLEUM COR-
PORATION, Appellant,**

v.

**KANSAS–NEBRASKA NATURAL GAS
COMPANY, Inc., Appellee.**

No. 16583.

United States Court of Appeals
Eighth Circuit.

Jan. 12, 1962.

Byron M. Gray, Topeka, Kan., for appellant; Wilbur W. Heard and John F. Jones, Tulsa, Okl., on the brief.

Ezekiel G. Stoddard, Washington, D. C., for appellee; James D. Conway and Elmer J. Jackson, Hastings, Neb., on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

VOGEL, Circuit Judge.

This is an appeal from a judgment allowing appellee, Kansas-Nebraska Natural Gas Company, Inc., recovery of alleged overpayments for natural gas purchased from Pan American Petroleum Corporation, appellant.

Appellee is a Kansas corporation engaged in the purchase, production, transmission, distribution and sale of natural gas in the states of Kansas, Nebraska and Colorado. It concededly comes within the definition of a natural-gas company (15 U.S.C.A. § 717a(6)) in the Natural Gas Act, 15 U.S.C.A. §§ 717–717w, as amended, hereinafter referred to as the Act.

Appellant is a Delaware corporation engaged in the production and sale of natural gas in interstate commerce from wells in the Kansas Hugoton Field.

The amount in controversy exceeds $10,000, exclusive of interest and costs. (28 U.S.C.A. § 1332(a) as amended.)

The case, tried to the court upon the pleadings and a written stipulation of facts, involved sales of natural gas from the Hugoton Field to appellee for transportation and resale by the latter in interstate commerce. These sales were made pursuant to three separate contracts dated October 8, 1949, March 28, 1950, and March 11, 1952, which provided for wellhead prices of 7¢ per MCF (thousand cubic feet), 7.5¢ per MCF and 10¢ per MCF respectively. The pressure base under each contract was 16.4 p. s. i. a. (pounds per square inch absolute). The contract of March 28, 1950, stipulated as being representative of all three contracts, provided for wellhead prices of gas for five years from date of first delivery at 7¢ per MCF at 16.4 p. s. i. a.; for the second five years at 8¢. Included also was the following provision:

"If the Kansas Corporation Commission, the Federal Power Commission, or any other governmental agency, whether State or Federal, having competent jurisdiction, at any time during the term of this contract fixes or determines a higher price for gas in the Kansas Hugoton Field than is set forth in this Section 1, (a), (b) and (c), the Buyer shall pay Seller the price thus fixed or determined, provided, however, that the price to be paid by Buyer to Seller shall at no time during the contract period hereof be less than the price set out * * *."

Subsequently, the Kansas Corporation Commission, by order dated December 2, 1953, set a minimum price of 11¢ per MCF measured at a standard pressure base of 14.65 p. s. i. a. for natural gas at the wellhead from the Hugoton Field. In January, 1954, appellee and Cities Service Gas Company instituted review proceedings of this order in a Kansas state court. Appellee, however, to avoid expense and upon assurances that Cities Service would continue the suit, withdrew without prejudice from the review action. Before final decision of the Kansas Supreme Court in these review proceedings, appellee, by letter dated February 18, 1954, and speaking of the 11¢ order, notified appellant as follows:

"During the period of appeal and pending final judicial determination of said Order, beginning January 1, 1954, Kansas-Nebraska Natural Gas Company, Inc., intends to pay for all gas purchased by it in the Kansas Hugoton Field in compliance with said Order. This compliance, however, is made to avoid any penalties or actions under the laws of Kansas for any violation, and all payments made to you in compliance with said Order, pending its final judicial determination will be paid to you under protest and as involuntary payments on our part, all without prejudice to our rights.

Should the said order be modified or declared to be invalid either in

whole or in part, any and all overpayments made to you by virtue thereof shall be due and owing Kansas-Nebraska Natural Gas Company, Inc. In event of any such overpayments, the amount shall be withheld from subsequent payments in the event you have not made full settlement of any overpayment."

The checks given by appellee and accepted by appellant for gas thereafter purchased referred to the above letter and noted that payment was being made subject to the terms thereof. On March 3, 1954, as a result of the 11¢ order, appellee applied for permission from the Kansas Corporation Commission to increase its rates for the sale of natural gas, which permission was granted. A similar application was subsequently made to, and granted by, the FPC effective as of January 1, 1955.

On June 7, 1954, Phillips Petroleum Co. v. State of Wisconsin was decided by the Supreme Court of the United States, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. Thereby the jurisdiction of the FPC under the Act was, for the first time, extended to include the regulation of sales of natural gas by independent producers, such as appellant, who resell in interstate commerce. Pursuant to this decision, the FPC on July 16, 1954, issued its order No. 174 requiring, *inter alia,* that: (1) All natural gas companies subject to the Act obtain a certificate of public convenience and necessity before engaging in any transportation or sale of natural gas; (2) under § 4 of the Act (15 U.S.C.A. § 717c) the filing of schedules show all rates and charges incident thereto; and (3) by regulation, no independent producer make any change in rates in effect on and after June 7, 1954, without first filing a change in rates pursuant to § 4(d) of the Act (15 U.S.C.A. § 717c(d)). The rules and regulations adopted by such order were made applicable on and after June 7, 1954, the date of the Phillips decision, supra.

In accordance with this order, appellant in November, 1954, tendered to the FPC its rate schedule of gas sold appellee under the October 8, 1949, March 29, 1950, and March 11, 1952, contracts; a copy of said contracts; a copy of the Kansas 11¢ order and a copy of the billing for gas sold appellee during May, 1954. Appellant simultaneously mailed appellee copies thereof, stating that they had been filed with the FPC in compliance with the latter's order No. 174–A.[1]

Thereafter by letter dated March 8, 1955, the FPC advised appellant that its rate filings "have been accepted for filing" and:

"This *acceptance for filing shall not be construed as a waiver* of the requirements of Section 7 of the Natural Gas Act, as amended; *nor shall it be construed as constituting approval of any rate,* charge, classification, or any rule, regulation or practice affecting such rate or service contained in the rate filing; *nor shall such acceptance be deemed as recognition of any claimed contractual right* or obligation associated therewith; and *such acceptance is without prejudice* to any findings or orders which have been or may hereafter be made by the Commission in any proceeding now pending or hereafter instituted by or against your company." (Emphasis supplied.)

The only information appellee had of the FPC's acceptance of appellant's rate filings was the latter's letter of May 10, 1955, with an enclosure of a copy of the FPC's letter of acceptance. Apparently this information was furnished appellee in conformity with a letter dated November 23, 1954, wherein appellee requested data as to the steps taken by appellant in compliance with Order No. 174–A.

In 1957 the State of Kansas enacted a 1% severance tax on natural gas to become effective July 1, 1957. In regard thereto, appellee informed appellant that pursuant to the original gas-purchase

---

[1]. Order No. 174 was subsequently amended by Nos. 174–A and 174–B in matters not pertinent to this appeal.

contracts it would share one-half of this tax burden, but that first, since such would constitute an increase in rate, appellant, under FPC regulations, was required to file such increased rate with the FPC before it would become effective.

In conformity with the applicable FPC regulations, appellant on June 28, 1957, by letter submitted an increased rate schedule of 11.055¢ which reflected appellee's share of said severance tax. This letter of transmittal contained a "Comparison of prices prior to and subsequent to such change in price (cents per MCF)", showing an 11¢ base price per MCF as of June 30, 1957, and as of July 1, 1957, a total price per MCF of 11.055¢. By letter to the appellant dated August 19, 1957, the FPC notified the former of the acceptance of such new rate for filing. The letter also contained a cautionary paragraph similar to the one contained in the letter of March 8, 1955, supra. Appellee was notified of the FPC's action in this regard by appellant's letter of August 29, 1957.

The review proceedings instituted by appellee and Cities Service, spoken of earlier, resulted in a decision of the Kansas Supreme Court on December 8, 1956, sustaining the 11¢ order. Cities Service Gas Co. v. State Corporation Commission of Kansas, 180 Kan. 454, 304 P.2d 528. This decision was reversed by the Supreme Court of the United States. Cities Service Gas Co. v. State Corporation Commission of Kansas, 1958, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed.2d 355. Thereafter, on April 11, 1959, the Kansas Supreme Court held that the result of the reversal in Cities Service, supra, was to render the Kansas 11¢ order void *ab initio*. Cities Service Gas Co. v. State Corporation Commission of Kansas, 184 Kan. 540, 337 P.2d 640, certiorari denied 361 U.S. 836, 80 S.Ct. 89, 4 L.Ed.2d 77. The Kansas severance tax had earlier been held invalid by the Kansas Supreme Court. State ex rel. Dole v. Kirchner, 1958, 182 Kan. 622, 322 P.2d 759.

By letters dated January 23, 1958, and February 18, 1958, appellee, relying upon the judicially determined invalidity of the severance tax and Kansas 11¢ order, advised appellant and other sellers of gas from the Hugoton Field that future payments would be calculated on the basis of the contract rates effective January 7, 1954, and would not include reimbursement for any share of the severance tax; also, that pursuant to its letter of February 18, 1954, refunds for the excess payments involuntarily made under the invalid 11¢ order would be requested. Upon appellant's denial of appellee's claim for recovery of such alleged overpayments, this suit was commenced. No claim is being made for recovery of appellee's share of the Kansas severance tax. Appellant filed a counterclaim for recovery of the difference, plus interest, between the amounts paid to it after January 1, 1958, and the amounts it alleges should have been paid to it under the rate of 11.055¢.

It was stipulated that appellee took no action before the FPC in relation to any of the rate filings mentioned above, nor did it seek to stay the effectiveness of the Kansas 11¢ order except by its earlier participation in the action by Cities Service Gas Company.

The trial court handed down an oral decision from the bench, subsequently making formal Findings and Conclusions. It found, *inter alia,* that:

> " * * * the Kansas 11¢ Order was void *ab initio* and never had any legal validity because at the time the Order was issued and at all times thereafter the Federal Power Commission had, under the Natural Gas Act, the *exclusive* jurisdiction over such sales and the Kansas State Corporation Commission had no jurisdiction over such sales"

and

> " * * * there was no determination by the FPC that 11.055¢ was a reasonable rate or the legal rate * * *."

In its Conclusions the court, after noting jurisdiction under 28 U.S.C.A. § 1332, observed:

"The interpretation and enforcement of the contracts between the parties on file with the FPC and granting relief to Plaintiff [appellee] does not require this Court to determine the reasonableness of the rates on file with the FPC nor to determine what constitutes reasonable rates"

and

"Plaintiff's action to recover the overpayments ·made under compulsion of the Kansas 11¢ Order does not constitute a collateral attack on any order or determination of the FPC and does not attack or challenge any rate schedules on file with the FPC. Plaintiff's action merely requires the proper interpretation under the law of what constituted the legal rates under its contracts filed as rate schedules and the enforcement of such rate schedules as so properly interpreted."

The court, relying upon United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373, and United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div., 1958, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed. 2d 153, held:

" * * * The legally effective rate under each rate schedule was the price which Defendant was entitled to receive and Plaintiff was obligated to pay on June 7, 1954 under the terms of each contract, and not the 11¢ per Mcf price that was actually being paid under compulsion of the Kansas 11¢ Order.

\* \* \* \* \* \*

"The supplemental rate filings made by Defendant in July 1957 pursuant to Order No. 197 did not constitute 11.055¢ per Mcf as the legally valid rate under the three rate schedules. The supplemental filings merely authorized an increase in the contractual rates effective as of June 7, 1954, by permitting Plaintiff to pay and Defendant to receive, in addition to those rates, the amount of one-half of the Kansas state severance tax of 1%. Since Plaintiff was actually paying 11¢ per Mcf at that time under compulsion of the invalid Kansas 11¢ Order (pending ultimate judicial determination of the validity of that Order), the 1% severance tax was measured on the basis of 11¢ per Mcf, making the tax 0.110¢ per Mcf and making Plaintiff's share .055¢ per Mcf. In accepting such supplemental filings there was no determination by the FPC that 11.055¢ was a reasonable rate or the legal rate under the contracts filed as rate schedules."

In so holding the court noted:

"The instant contract[2] contains a specific rate or rates. By reason of an invalid order of the Kansas Commission, a higher rate has been collected. The order fixing the invalid rate was void from its beginning. To this Court, therefore, it would seem to be unjust to permit the defendant to retain the amounts thus unlawfully collected."

Accordingly, judgment was given for ,appellee for the full amount of the alleged overpayments, $20,831.82 plus interest and appellant's counterclaim was dismissed.

■ Appellant's assignments of error are concerned essentially with the alleged infringement by the trial court of the exclusive primary jurisdiction of the FPC. It points out initially that appellee's action can succeed only as an enforcement action under § 22 of the Act (15 U.S.C.A. § 717u).[3] In this regard

2. Apparently the court here has reference to the contract stipulated as being representative of all three contracts.

3. § 22. "The District Courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. * * *"

appellant contends that while the court disclaimed making any collateral attack upon the filed rate with the FPC but, rather, stated the action to be one to enforce filed rate schedules (§ 22 supra), yet the court noted the derivation of its jurisdiction to be 28 U.S.C.A. § 1332 (diversity and amount).

Appellant contends that by the Commission accepting the tendered rates for filing which were based upon the Kansas 11¢ order and the severance tax, such rates became the "effective" or "legal" filed rates and could be changed only by FPC action under § 5(a) of the Act (15 U.S.C.A. § 717d(a)).[4] From this they reason that the only way the action could be questioned would be by the review procedure provided by § 19 of the Act (15 U.S.C.A. § 717r as amended),[5] and that appellee, not having utilized such appeal procedure, is now precluded from questioning collaterally the FPC "orders" here involved on grounds that the latter are now *res judicata.* They further contend that the trial court, by "nullifying" the orders of the FPC accepting the 11¢ and 11.055¢ rates, has usurped the power of the Courts of Appeals under § 19 of the Act.

First, with reference to the question of jurisdiction, it is noted that the requirements of 28 U.S.C.A. § 1332 as to diversity of citizenship and amount involved are fully satisfied. Unless the provisions of the Natural Gas Act bar jurisdiction of the district court, the action has been properly brought and the court acquired and maintained jurisdiction of the parties and of the subject matter in suit. We think the answer is found in the recent case of the Supreme Court of the United States, Pan American Petroleum Corp. v. Superior Court of Delaware, 1961, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584. The sole issue there was

whether the Delaware Superior Court could take jurisdiction of a case which was bottomed on circumstances identical with those involved herein. The Delaware Supreme Court had sustained its lower court's finding of jurisdiction, stating that the claims of Cities Service "* * * are not founded upon any liability *created* by the Natural Gas Act, but upon a private contract deriving its force from state law." (Emphasis in the original.) Columbian Fuel Corp. v. Superior Court of Delaware, Del.1960, 158 A.2d 478, 482. In affirming the Delaware court, Mr. Justice Frankfurter said, at page 663 of 366 U.S., at page 1307 of 81 S.Ct.:

> "The rights as asserted by Cities Service are traditional common-law claims. They do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas."

At page 664 of 366 U.S., at page 1308 of 81 S.Ct.:

> "* * * We are not called upon to decide the extent to which the Natural Gas Act reinforces or abrogates the private contract rights here in controversy. The fact that Cities Service sues in contract or quasi-contract, not the ultimate validity of its arguments, is decisive."

We conclude here that the District Court had jurisdiction of the controversy under 28 U.S.C.A. § 1332.

Appellant next refers to §§ 4 and 5 of the Act (15 U.S.C.A. §§ 717c and 717d) as giving specific authority to the FPC with respect to rates and argues that the action of the District Court was an invasion of the FPC's "exclusive and primary jurisdiction". In United Gas Pipe Line Co. v. Mobile Gas Service Corp., supra, 1956, 350 U.S. 332, 341, 76

---

4. § 5. This section provides in part: "Whenever the Commission, after a hearing had upon its own motion or upon complaint * * * shall find that any rate * * * is unjust * * * the Commission shall determine the just and reasonable rate * * * and shall fix same by order * * *."

5. § 19. This section provides for review of a Commission order, after rehearing by the Commission, in a United States Court of Appeals.

S.Ct. 373, 379, 100 L.Ed. 373, the Supreme Court said:

> "* * * These sections [§§ 4 and 5 of the Act] are simply parts of a single statutory scheme under which all rates are established initially by the natural gas companies, by contract or otherwise, and all rates are subject to being modified by the Commission upon a finding that they are unlawful. The Act merely defines the review powers of the Commission and imposes such duties on natural gas companies as are necessary to effectuate those powers; it purports neither to grant nor to define the initial rate-setting powers of natural gas companies.

> "The powers of the Commission are defined by §§ 4(e) and 5(a). The basic power of the Commission is that given it by § 5(a) to set aside and modify any rate or contract which it determines, after hearing, to be 'unjust, unreasonable, unduly discriminatory, or preferential.' This is neither a 'rate-making' nor a 'rate-changing' procedure. It is simply the power to review rates and contracts made in the first instance by natural gas companies and, if they are determined to be unlawful, to remedy them. * * * The scope and purpose of the Commission's review remain the same—to determine whether the rate fixed by the natural gas company is lawful."

At page 343 of 350 U.S., at page 380 of 76 S.Ct.:

> "* * * The initial rate-making and rate-changing powers of natural gas companies remain undefined and unaffected by the Act."

In the instant case, the jurisdiction of the FPC to determine the lawfulness of the rates involved has not been brought to bear. There has been no request for a hearing before the FPC, either on its own motion or on the motion of anyone else, to have determined the lawfulness of the rates under the "just and reasonable" standard of § 4(e) (15 U.S.C.A. § 717c(e)). The court here was not asked to adjudicate any violation of the Act or to enforce any liability created thereby under § 22 of the Act (15 U.S. C.A. § 717u), supra. Appellee's claims for refund because of alleged overpayment are not founded on any liability created by the Act but arise solely out of the contracts between the parties, which they had a perfect right to make and which are binding upon them, unaffected by the Act unless there has been a finding on the part of the FPC that the rates were unlawful as being unjust and unreasonable. Such a finding by the FPC could only be made after a hearing initiated on its own motion or by that of interested parties.

. Appellant nevertheless argues that by the FPC's acceptance of the tendered rates based partially on the Kansas 11¢ order and the 1% severance tax, these rates became "effective or legal" and effectively changed the contract rate between the parties. Answer to this contention is in the letter from the FPC dated March 8, 1955, and subsequent letters accepting rate filings by the appellant, wherein the FPC stated, "* * * acceptance for filing shall not be construed as a waiver * * *; nor shall it be construed as constituting approval of any rate, charge, classification, or any rule, regulation or practice affecting such rate or service contained in the rate filing; nor shall such acceptance be deemed as recognition of any claimed contractual right or obligation associated therewith; and such acceptance is without prejudice to any findings or orders which have been or may hereafter be made by the Commission * * *." No order was issued and no approval was given and no determination of any kind was made by the FPC.

It should also be remembered that the contracts between the parties specifically provided that if the Kansas Corporation Commission, the FPC, or any other governmental agency, whether state or federal, *having competent jurisdiction,* should determine a higher price for gas, such higher price would be paid. When

the Kansas 11¢ order was made, the appellee took the position by letter that it would pay the increased rate but that if such order was subsequently declared invalid, such overpayments were to be due appellee. Checks in payment of gas thereafter carried the notation that payment was being made subject to the terms of such letter.

█ When the Supreme Court of the United States in Cities Service Gas Co. v. State Corporation Commission of Kansas, 1958, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed.2d 355, held the Kansas 11¢ order unlawful and the Supreme Court of Kansas, in Cities Service Gas Co. v. State Corporation Commission of Kansas, 1959, 184 Kan. 540, 337 P.2d 640, certiorari denied 361 U.S. 836, 80 S.Ct. 89, 4 L.Ed. 2d 77, held in accordance with such decision that the Kansas 11¢ order was void *ab initio*, the effect was that the order became a complete nullity. Being a nullity, it could not modify the contract rates between the parties. The effect could only have been to leave the parties where they were prior to the unlawful order—in other words, bound by the contract rates to which they had agreed in 1949, 1950 and 1952. A parallel of reasoning is applicable to the Kansas 1% severance tax subsequently held invalid by the Kansas Supreme Court, State ex rel. Dole v. Kirchner, supra.

In dealing with a similar problem involving an order of the Oklahoma Commission establishing a minimum rate, which order was found to be invalid, the Court of Appeals for the Third Circuit in Natural Gas Pipeline Co. of America v. F. P. C., 1958, 253 F.2d 3, 7, certiorari denied sub nom. Dorchester Corp. v. Natural Gas Pipeline Co., 357 U.S. 927, 78 S.Ct. 1372, 2 L.Ed.2d 1370, said:

"* * * When the United States Supreme Court found Oklahoma's action to have been unlawful and set the state commission order aside, there was no longer even the semblance of a valid law, or lawful order which could modify the contract rate. The contract rate, therefore,

under the mandate of the Supreme Court must be held to have been the rate effective on June 7, 1954."

The Tenth Circuit, in Cities Service Gas Co. v. F. P. C., 1958, 255 F.2d 860, certiorari denied sub nom. Magnolia Petroleum Co. v. Cities Service Gas Co., 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73, in dealing with the same Kansas order with which we are here concerned, said:

"* * * *The Act recognizes the rights of the parties to set rates by individual contract and abrogates none of the usual contract rights except for the reviewing powers granted the Commission upon hearing.* * * *" (255 F.2d at 864.)

* * * * * *

"* * * In the present case, as in the Mobile case, no hearing has been held to determine the propriety of the filed rate. *When the United States Supreme Court struck down the Kansas order, there was no longer a valid order which could modify the contract rate, and the contract rate was the rate effective on June 7, 1954.* See Natural Gas Pipeline Co. of America v. Federal Power Commission, supra." (255 F.2d 865.) (Emphasis supplied.)

Support for the proposition that the Natural Gas Act is not inconsistent with agreements between the parties for repayments in the event certain increases in rates are held void is found in Natural Gas Pipeline Co. of America v. Harrington, 5 Cir., 1957, 246 F.2d 915, certiorari denied 356 U.S. 957, 78 S.Ct. 992, 995, 2 L.Ed.2d 1065. Therein recovery was sustained for the difference between the contract rate and the price paid under order of the Oklahoma Corporation Commission, which order was subsequently held to be invalid, as was the Kansas 11¢ order here.

The Supreme Court, in holding that the Natural Gas Act does not give the right to gas companies to abrogate their contract obligations and increase at will their price of gas by filing new rate schedules, subject only to the FPC's ap--

proval under § 4(e) (15 U.S.C.A. § 717c (e)), stated in United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div., supra, 1958, 358 U.S. 103, 113–114, 79 S.Ct. 194, 200:

" * * * This concern [protection of the public from excessive rates as well as the financial stability of natural gas companies] was surely a proper one for Congress to take into account in framing its regulatory scheme for the natural gas industry, cf. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 603 [64 S.Ct. 281, 88 L.Ed. 333], and we think that it did so not only by preserving the 'integrity' of private contractual arrangements for the supply of natural gas, [United Gas Pipe Line Co. v. Mobile Gas Service Corp.] 350 U.S. [332], at 344 [76 S.Ct. 373, at 380, 100 L.Ed. 373] (subject of course to any overriding authority of the Commission), but also by providing in § 4 for the earliest effectuation of contractually authorized or otherwise permissible rate changes consistent with appropriate Commission review."

Appellant has cited cases dealing with the Interstate Commerce Commission as authority for the proposition that "it would destroy the purpose of the Interstate Commerce Act to permit a court to reach behind the rate on file with the Commission and collaterally revise the rate properly on file with the Commission", stating that this doctrine has been followed without deviation and citing Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; T. I. M. E., Inc. v. United States, 1959, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952. The answer to that attempt to draw a parallel between the Interstate Commerce Act and the Natural Gas Act is found in Mobile, supra, at pages 338 and 339 of 350 U.S., at page 378 of 76 S.Ct., where the Supreme Court said:

"In construing the Act [the Natural Gas Act], we should bear in mind that it evinces no purpose to abrogate private rate contracts as such. To the contrary, by requiring contracts to be filed with the Commission, the Act expressly recognizes that rates to particular customers may be set by individual contracts. *In this respect, the Act is in marked contrast to the Interstate Commerce Act, which in effect precludes private rate agreements by its requirement that the rates to all shippers be uniform,* a requirement which made unnecessary any provision for filing contracts. See Armour Packing Co. v. United States, 209 U.S. 56 [28 S. Ct. 428, 52 L.Ed. 681]. The Commission in its brief recognizes this basic difference between the two Acts and notes the differing natures of the industries which gave rise to it. The vast number of retail transactions of railroads made policing of individual transactions administratively impossible; effective regulation could be accomplished only by requiring compliance with a single schedule of rates applicable to all shippers. On the other hand, only a relatively few wholesale transactions are regulated by the Natural Gas Act and these typically require substantial investment in capacity and facilities for the service of a particular distributor. Recognizing the need these circumstances create for individualized arrangements between natural gas companies and distributors, the Natural Gas Act permits the relations between the parties to be established initially by contract, the protection of the public interest being afforded by supervision of the individual contracts, which to that end must be filed with the Commission and made public." (Emphasis supplied.)

Inasmuch as there has been no hearing before the FPC to determine the lawfulness of the rates specified in the contracts between the parties, and no orders have been made by the FPC approving, rejecting or in any way affecting such

rates, the "integrity" of the private contractual arrangements between the parties, as referred to by the Supreme Court in Memphis, supra, remains unaffected. The action of the District Court here has preserved that integrity.

█ Appellant's contention that the doctrine of *res judicata* is applicable cannot be maintained as the FPC issued no orders and made no determinations. Appellant's further claim that the trial court usurped the power of the Courts of Appeals under § 19 of the Act (15 U.S.C.A. § 717r as amended) is for the same reason without merit.

Affirmed.