**SATURN OIL AND GAS COMPANY, a Corporation, Appellant,**

v.

**NORTHERN NATURAL GAS COMPANY, a Corporation, Appellee.**

**No. 18070.**

United States Court of Appeals
Eighth Circuit.

May 4, 1966.

Flavel A. Wright, of Cline, Williams, Wright, Johnson, Oldfather & Thompson, Lincoln, Neb., and Chisman Hanes, of Klagsbrunn & Hanes, Washington, D. C., made argument for appellant and filed brief.

John B. Will, Omaha, Neb., made argument for appellee and filed brief with Jack C. Osborne and F. Vinson Roach, Omaha, Neb., and Robert B. Crosby, of Crosby, Pansing, Guenzel & Binning, Lincoln, Neb.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by Saturn Oil and Gas Company (Saturn) from an adverse judgment in the United States District Court for Nebraska awarding appellee Northern Natural Gas Company (Northern) $29,327.51 plus interest as a refund on natural gas purchase overpayments allegedly made under protest from January 1, 1954, to February 1, 1958, and dismissing Saturn's counterclaim for $69,074.10 representing the difference between the alleged contract price and the price actually paid by Northern from February 1, 1958, to August 31, 1964.

This case was heard by the court without a jury. The court's findings of fact, conclusions of law and basis of decision are set forth in its memorandum opinion reported at 240 F.Supp. 89.

This suit was originally filed in the state court and was properly removed. Jurisdiction in the trial court, based upon diversity of citizenship and the requisite amount, is established. 28 U.S.C.A. § 1332.

■ The rights of the parties hereto are based upon contract. It is well-settled that the type of action here involved is not barred or superseded by the provisions of the Federal Natural Gas Act. See Pan American Petroleum Corp. v. Superior Court of Delaware, 366 U.S. 656, 663, 81 S.Ct. 1303, 6 L.Ed.2d 584; Landon v. Northern Natural Gas Co., 10 Cir., 338 F.2d 17, 20; Pan American Petroleum Corp. v. Kansas-Nebraska Natural Gas Co., 8 Cir., 297 F.2d 561, 566.

In our present case, as was the situation in our *Pan American* case and *Landon,* FPC accepted for filing the producer's tendered rate based in part on a Kansas minimum price order but held no statutory hearing and made no determination as to the validity of the rate. Each of the courts held such filing did not preclude recovery of excess payments made by reason of the Kansas minimum rate order which was subsequently held to be void.

■ The basic issue presented by this appeal relates to the construction of the letter contract of March 27, 1957, entered into between Saturn and Northern. Saturn contends that the agreement fixes a new price for the gas furnished for the period commencing January 1, 1957, at the level of the Kansas minimum price order—11¢ per thousand cubic feet (Mcf) at 14.65 pounds pressure per square inch absolute (psia). The original contract between Saturn and Northern entered into on December 1, 1951, provides for the sale of gas produced by Saturn at certain wells in the Kansas-Hugoton field for 11¢ per Mcf measured at 16.4 psia. Such rate was to be effective for a five-year period commencing January 1, 1952, at the end of which period the price was open for renegotiation with provision made for arbitration if the parties were unable to agree upon a price.

In 1953 the Kansas Corporation Commission issued an order effective January 1, 1954, setting a minimum price of 11¢ per Mcf measured at 14.65 psia for gas produced in the Hugoton field. Since the volume of gas varies inversely with the pressure applied, the effect of this order was to increase the price of the gas involved in the Saturn-Northern contract.

On February 23, 1954, Northern wrote Saturn a letter advising Saturn that it would pay the increased price called for by the Kansas minimum rate order under protest but would expect a refund for all payments made above the original price if the Kansas order was found to be invalid. Each check tendered thereafter bore a stamp endorsement reading: "Endorsed and accepted subject to conditions of a letter dated February 23, 1954, received by payee from payor pertaining to the wellhead price order of the Kansas Commission dated December 2, 1953."

On January 1, 1957, when the price fixed by the original contract became open for renegotiation, both parties were reluctant to enter into a new price agreement because of pending legislation in which they were interested. On March

27, 1957, they entered into an agreement, the pertinent portions of which read:

"Inasmuch as the parties have been unable to complete negotiations of the price to be effective January 1, 1957, Seller is agreeable to extending the time for the completion of such negotiations or arbitration and to postpone the commencement date on which a possible change in price shall become effective to a date not later than July 1, 1957; provided, however, that Seller may designate the first day of any month between the date hereof and July 1, 1957, as the commencement date on which a possible change in price shall become effective by written notice to Northern given not less than 30 days prior to such effective date.

"It shall be understood that during the period from the date hereof until July 1, 1957, or said designated date prior thereto, Northern agrees to pay Seller and Seller agrees to receive prices for gas delivered under said Contract at the rate provided for in Seller's F.P.C. Gas Rate Schedule corresponding with said Contract as now effective or hereafter modified by the Federal Power Commission, which rate at the present time is 11¢ per Mcf at 14.65 psia."

Following this agreement, Northern continued to place upon its checks the endorsement heretofore described and Saturn continued to accept and endorse the checks.

On January 20, 1958, the United States Supreme Court in Cities Service Gas Co. v. State Corporation Commission of Kansas, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed.2d 355, reversed the decision of the Kansas Supreme Court which had sustained the minimum price order, and thereafter the Supreme Court of Kansas held that the result of such reversal was to render the Kansas order void ab initio. Cities Service Gas Co. v. State Corporation Commission of Kansas, 184 Kan. 540, 337 P.2d 640.

On March 24, 1958, Northern by letter informed Saturn that payments for gas purchased in February 1958 and thereafter would be made at the price stipulated in the original contract—11¢ per Mcf at 16.4 psia. Payments thereafter were made upon such basis.

Northern demanded a refund of $29,-327.51, the difference between the payments it had made under protest and the amount that would have been due by the terms of the original contract price and upon Saturn's refusal to pay, brought this action to establish its claim. Saturn has counterclaimed for $69,074.10, the difference between the amount it claims is due under the March 27, 1957, agreement for the period from February 1, 1958, to August 31, 1964, and the amount actually paid by Northern on the basis of the original contract rate for such period.

Saturn admits that it owes Northern $20,628.18 for payments made above the contract price for the period to December 31, 1956. Such a result is compelled by Pan American Petroleum Corp. v. Kansas-Nebraska Natural Gas Co. and Landon v. Northern Natural Gas Co., supra. This court in *Pan American,* after holding that the effect of the Supreme Court's invalidation of the Kansas minimum price order was to make such order void ab initio and a complete nullity, stated:

"Being a nullity, it could not modify the contract rates between the parties. The effect could only have been to leave the parties where they were prior to the unlawful order—in other words, bound by the contract rates to which they had agreed in 1949, 1950 and 1952. * * *" 297 F.2d 561, 568.

We quoted with approval from Cities Service Gas Co. v. Federal Power Commission, 10 Cir., 255 F.2d 860, 865, as follows:

"When the United States Supreme Court struck down the Kansas order, there was no longer a valid order which could modify the contract rate, and the contract rate was the rate effective on June 7, 1954. * * *" 297 F.2d 561, 568.

Saturn urges that our present case differs from *Pan American* and *Landon* by reason of the agreement entered into between the parties on March 27, 1957, which has heretofore been set out. Saturn's claim of a new rate contract, if established, would distinguish this case factually from *Pan American* and *Landon* with respect to payments falling due subsequent to the effective date of such contract which is said to be January 1, 1957. The trial court found the March 27, 1957, contract to be ambiguous but then went on to hold that when the contract is viewed in the light of surrounding circumstances and the conduct of the parties both before and after the execution of the agreement, such agreement must be construed as postponing the time fixed by the original contract for negotiating or arbitrating a new rate at the expiration of five years from the effective date of the contract and that such contract cannot be construed as fixing a new rate for gas purchased, as contended by Saturn.

The crucial words of the contract are that the gas delivered is to be paid for "at the rate provided in the Seller's F.P.C. gas rate schedule corresponding with said contract as now effective or hereafter modified by the Federal Power Commission, which rate at the present time is 11¢ per Mcf at 14.65 psia."

As heretofore pointed out, courts have consistently held that rates imposed by an invalid order, such as the Kansas order, are void ab initio and a complete nullity. A void rate order cannot modify or alter a valid contract rate. Hence, as we stated in *Pan American,* the result of the determination of the invalidity of the Kansas order was to leave the parties where they were prior to the unlawful order. In other words, the Kansas order could have no bearing upon the effective rate and the effective rate was the rate the parties bargained for in their original contract. On the effective rate issue, the trial court states:

"The parties knew that the Kansas 11¢ Order was being contested and that Northern expected a refund if the Order were to be ruled void, ab initio, as it subsequently was. The effective date [rate] under file then was one that was only effective if the Kansas Order was declared valid. All of the correspondence between the parties indicates that they understood this to be the case. 'As now effective' can only be reasonably construed under these circumstances to include the contingent factor of possible invalidity of the Kansas 11¢ Order." 240 F.Supp. 89, 93.

We are inclined to the view that when the contract is read as a whole there is no ambiguity and that the contract does not fix a new price to be paid for the gas and that the higher price fixed by the Kansas order is the effective rate only upon the contingency that the validity of the Kansas order is upheld and that upon its adjudged invalidity it constitutes no part of the effective rate.

It is our view that our *Pan American* case and the authorities there cited and relied upon define the meaning of effective rate under the circumstances here presented and make it clear that the Kansas rate order is part of the effective rate only upon the contingency that its validity is upheld. The final determination that the Kansas order is void ab initio deprives such order from having any bearing upon the effective gas rate. After such adjudication, the effective rate is the rate fixed by the original contract.

The words "corresponding with said contract" which refer to the original contract afford additional support for the view that a new rate was not within the contemplation of the parties.

The parties, as part of the contractual renegotiation right, could by appropriate language have fixed a new rate at 11¢ per Mcf at 14.65 psia or any other figure subject of course to FPC regulations but they did not do so. The March 27, 1957, letter agreement goes no further than to maintain the status quo with respect to rates and postpone the exercise of rene-

gotiation rights conferred by the original contract.

If Saturn's contention of ambiguity, which was upheld by the trial court, is accepted the result would be no different. The evidence, relating to the facts surrounding the execution of the March 27, 1957, contract and the conduct of the parties prior thereto and thereafter, including the practical interpretation of the contract by the parties, supports a construction of the contract to the effect that it was entered into merely for the purpose of postponing the renegotiation period provided for in the original contract and that it was not intended by either party to make a change in the effective contract rate then in existence.

■ The standards for construction of ambiguous contracts are well-established. No attack is here made upon the rules of construction applied by the trial court nor is any attack made upon the evidence offered and received to aid the court in its construction. Hence, no detailed discussion of such subjects is required. Our view of the record satisfies us that Saturn has failed to demonstrate that the court's construction of the agreement in controversy is clearly erroneous. The evidence discloses that both parties favored postponing negotiations contemplated by the original contract for a change in rates because of the fear that such negotiations might adversely affect pending legislation in which they were interested.

Both parties were fully aware of the pending litigation attacking the validity of the Kansas order. Northern has consistently contended that they expected a refund for the amounts paid by reason of the Kansas order in event such order was held invalid and gave continuous notice thereof by the endorsements placed upon their payment checks, which checks were accepted, endorsed and cashed by Saturn. We find nothing in the letter of April 22, 1955, which is inconsistent with Northern's asserted position. The letter urges Saturn to comply with FPC regulations and file the rate as fixed by the Kansas order, the validity of which was then in litigation. Such compliance would appear desirable to protect Northern for rate purposes on payments made in event the Kansas order was upheld. The letter reiterates that Northern is making the payment under duress without waiver of any rights to claim a refund.

The fact that Northern has continued in reports to the FPC to set out liability for gas purchases at 11¢ per Mcf at 14.65 psia is a fact that was considered by the trial court. Such evidence is not in any sense conclusive support for the interpretation urged by Saturn. Northern advised the FPC as to the controversy involved in the present litigation. Northern's ultimate liability for gas purchased from Saturn could not be determined with certainty until the final termination of this litigation.

■ Upon the basis of undisputed evidence that Northern furnished the form for the letter agreement in controversy, Saturn urges that such agreement must be interpreted most strongly against Northern as draftsman. The rule urged has been frequently applied under appropriate circumstances but is not controlling here. The asserted rule is one of many rules used by courts in interpreting contracts and is entitled to consideration. The rule urged is usually resorted to only when a satisfactory result cannot be reached by applying more favored rules of construction. See Amsterdam Syndicate, Inc. v. Fuller, 8 Cir., 154 F.2d 342, 343; Boswell v. Chapel, 10 Cir., 298 F.2d 502, 506; 15 Am.Jur.2d, Contracts § 276, p. 691; 17A C.J.S. Contracts § 324, p. 225.

Saturn's contention that Rule 52(a), clearly erroneous standard, does not apply to the review of the trial court's findings lacks merit. In our present case, the court's findings are based upon evidence offered by both parties bearing on the circumstances surrounding the execution of the contract and the conduct of the parties both before and after the signing of the agreement. The court having found ambiguity, based its interpretation on such evidence. In answering a similar

contention, the Court of Appeals for the Tenth Circuit in Boswell v. Chapel, 298 F.2d 502, 506, stated, "Where the interpretation of language in a contract is dependent upon extrinsic evidence, the trial court's findings are conclusive where supported by substantial evidence representing the more reasonable alternatives upon the whole record."

This court has consistently in recent years taken a strong position to the effect that it is the responsibility of the trial judge in a nonjury case to pass upon credibility of witnesses as well as to draw reasonable inferences from undisputed evidence and that the trial court's findings will be set aside only if clearly erroneous. Baker v. United States, 8 Cir., 343 F.2d 222, 224; Cole v. Neaf, 8 Cir., 334 F.2d 326, 329.

What we have heretofore said is dispositive of this appeal and requires an affirmance. No purpose will be served in discussing the other issues raised by the parties.

Affirmed.